**Ex parte Philip SHERIDAN.**

No. 04–97–00531–CR.

Court of Appeals of Texas,
San Antonio.

March 18, 1998.

Rehearing Overruled May 19, 1998.

Discretionary Review Refused
Sept. 30, 1998.

Gerald H. Goldstein, Van G. Hilley, Cynthia Hujar Orr, Goldstein, Goldstein & Hilley, San Antonio, for Appellant.

Angela Moore, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and GREEN, JJ.

## OPINION

RICKHOFF, Justice.

Philip Sheridan appeals an order of the trial court denying relief on his pretrial application for a writ of habeas corpus. He asserts that the prior cancellation of his alcoholic beverage license constitutes punishment and that his prosecution for the conduct that resulted in the cancellation is therefore barred by the prohibitions against double jeopardy. Because we conclude that the cancellation did not constitute punishment for double jeopardy purposes, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

The Texas Alcoholic Beverage Commission canceled Sheridan's alcoholic beverage li-

cense on the ground that he falsely stated in the applications for the license that he had not been convicted of a felony within the last three years. *See* TEX. ALCO. BEV.CODE ANN. § 61.71(a)(4) (Vernon Supp.1998). The State subsequently indicted him for making these false statements in the applications. *See id.* § 101.69 (Vernon 1995).

### DISCUSSION

Sheridan argues that his prosecution is barred by the prohibitions against double jeopardy found in the Fifth Amendment to the United States Constitution, article 1, section 14 of the Texas Constitution, and article 28.13 of the Texas Code of Criminal Procedure.

### Standard of Review

■ The issue in this appeal is whether the cancellation of Sheridan's alcoholic beverage license constitutes punishment for double jeopardy purposes. This issue is a mixed question of law and fact that we review *de novo*. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

### Federal Constitutional Prohibition Against Double Jeopardy

■ The Double Jeopardy Clause of the United States Constitution prohibits multiple punishments for the same offense. *See* U.S. CONST. amend. V; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Ex parte Pitluk*, 940 S.W.2d 220, 221 (Tex.App.—San Antonio 1997, no pet.). The person asserting a double jeopardy violation bears the burden of establishing the violation. *See Pitluk*, 940 S.W.2d at 221.

In *United States v. Halper*, the Supreme Court held that sanctions imposed in nominally civil proceedings could constitute punishment for purposes of the Double Jeopardy Clause. *See* 490 U.S. 435, 446–47, 109 S.Ct. 1892, 1900–01, 104 L.Ed.2d 487 (1989). Under *Halper*, whether a sanction implicated the Double Jeopardy Clause depended on whether it served the traditional goals of punishment and whether it was so overwhelmingly disproportionate to the injury

caused that it could not be deemed to serve solely a remedial purpose. *See id.* at 448–49, 109 S.Ct. at 1901–02. In a recent decision, however, the Supreme Court "in large part disavow[ed] the method of analysis used in" *Halper* and set forth a different method of analysis. *See Hudson v. United States,* —— U.S. ——, ——, 118 S.Ct. 488, 491, 139 L.Ed.2d 450 (1997).

■ Under *Hudson,* we must consider other factors, in addition to those described in *Halper,* to determine whether a given punishment implicates the Double Jeopardy Clause. First, we must determine if the legislature has indicated either expressly or impliedly whether the sanction should be considered a criminal punishment or a civil penalty. *Id.* at ——, 118 S.Ct. at 493. Second, if the legislature has indicated an intention to create a civil penalty, we must determine whether the statutory scheme is nevertheless so punitive in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal punishment. *Id.* The following factors are relevant in making the second determination: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, namely, retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* The Court emphasized that " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)).

■ Applying the *Hudson* test to the license cancellation at issue here, we must first determine whether the legislature intended this sanction to constitute a civil, rather than a criminal, penalty. The Texas Alcoholic Beverage Commission form that

provides for the cancellation of Sheridan's license contains the following notation: "SEC.: 61.71(a)(4) CRIM. CODE: 101.69." Section 61.71(a)(4) of the Texas Alcoholic Beverage Code allows the Alcoholic Beverage Commission or its administrator to cancel a retail dealer's license if the licensee made a false statement or a misrepresentation in an original application or a renewal application. *See* TEX. ALCO. BEV.CODE ANN. § 61.71(a)(4) (Vernon Supp.1998). Section 101.69 of the Texas Alcoholic Beverage Code, which is also the statute under which Sheridan has been indicted, is found in the "General Criminal Provisions" of the Alcoholic Beverage Code. It provides that a person who makes a false statement on an application commits an offense punishable by imprisonment of 2–10 years. *See id.* § 101.69 (Vernon 1995).

Seizing on the reference to section 101.69 on the form, Sheridan argues that his license was canceled pursuant to a criminal statute. But this mere cross-reference to section 101.69 does not mean that the cancellation was effected pursuant to that statute. Indeed, because section 101.69 does not authorize cancellation of a license, Sheridan's license could not have been canceled pursuant to that statute.

■ Sheridan also notes that the block on the form labeled "civil penalty" contains a slash mark. He construes this slash mark as meaning that cancellation of his license was not a civil penalty, and that, by implication, the cancellation was necessarily a "criminal penalty". From a review of the entire form, it is clear that the slash mark is more properly construed as meaning that no monetary sanction was imposed. The form recites that the license will be "suspended/cancelled unless the licensee or permittee elects to *pay a civil penalty* in lieu of suspension. A civil penalty in the amount of $ ----- must be received by the final due date stated on the administrative order" (emphasis added).

■ We conclude that Sheridan's license was canceled pursuant to section 61.71, the statute which expressly provides that a license may be canceled for making false statements on an application. Although sec-

tion 61.71 does not expressly denominate cancellation as a civil sanction, by conferring the cancellation authority on the Commission, the legislature indicated that cancellation should be considered a civil sanction. *See Hudson,* —— U.S. at ——, 118 S.Ct. at 495 (holding that the conferral of authority to issue debarment orders upon an administrative agency was prima facie evidence that the legislature intended to establish a civil penalty). Having concluded that the legislature intended license cancellation to be a civil sanction, we must examine the factors in the second prong of the *Hudson* test.

### 1. Whether the Sanction is an Affirmative Disability or Restraint

 *Hudson* makes clear that the cancellation of a license to engage in a particular business is not an affirmative disability or restraint. In *Hudson,* the Office of the Comptroller of the Currency (OCC) instituted administrative proceedings against officers and directors of certain banking institutions. As a result of the administrative proceedings, the officers and directors were required to pay monetary penalties and were prohibited from participating in the affairs of any banking institution without the OCC's authorization. Comparing the prohibition from participating in the banking industry to the "infamous punishment of imprisonment," the Court concluded that the prohibition was not an affirmative disability or restraint. *See id.* at ——, 118 S.Ct. at 496 (quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960)).

The cancellation of Sheridan's license to sell alcoholic beverages is comparable to the prohibition against participating in the banking industry. Following *Hudson*'s reasoning, the cancellation is not an affirmative disability or restraint.

### 2. Whether the Sanction Was Historically Regarded as Punishment

Sheridan asserts that cancellation of a license to do business has been considered punishment since the Nineteenth Century. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225–26, 20 L.Ed.2d 117 (1968) (holding

that a lawyer is entitled to procedural due process before disbarment because disbarment is a form of punishment); *Johnson v. Securities and Exchange Comm'n,* 87 F.3d 484, 488–89 & n. 6 (D.C.Cir.1996) (holding that suspension from a profession is a civil penalty). Neither *Ruffalo* nor *Johnson* involved the Double Jeopardy Clause. And, more importantly, the *Hudson* Court expressly held that revocation of the privilege to engage in a particular profession has *not* historically been viewed as criminal punishment for double jeopardy purposes. *See* —— U.S. at —— – ——, 118 S.Ct. at 495–96.

### 3. Whether Scienter is Required

Section 61.71 sets out thirty-two alternative grounds for canceling an alcoholic beverage license. Only three of these grounds require a culpable mental state. *See* TEX. ALCO. BEV.CODE ANN. § 61.71(a)(5) (authorizing cancellation when a licensee, "with criminal negligence," sells, serves, or delivers an alcoholic beverage to a minor); TEX. ALCO. BEV.CODE ANN. § 61.71(a)(27) (authorizing cancellation when a licensee "knowingly" allows a person whose license has been canceled to sell or handle alcoholic beverages on the licensed premises); TEX. ALCO. BEV.CODE ANN. § 61.71(f) (authorizing cancellation when a licensee "knowingly" allows a person to possess a firearm on the licensed premises). Notably, the ground on which Sheridan's cancellation was based—making false statements on an application—does not require a finding of scienter.

### 4. Whether the Sanction Promotes the Aims of Punishment—Retribution and Deterrence

 For Sheridan, the license cancellation undoubtedly carried the "sting of punishment." *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 1945 n. 14, 128 L.Ed.2d 767 (1994). But whether a sanction constitutes punishment for double jeopardy purposes is not determined from the defendant's perspective. *Id.* Similarly, the fact that the cancellation may deter others from making false statements on their applications does not render the sanction criminal. The Court recognized

in *Hudson* that deterrence may serve civil, as well as criminal, goals. *See* —— U.S. at ——, 118 S.Ct. at 496. Here, the deterrence of this behavior serves a civil goal—ensuring that the Commission has the truthful information it needs to evaluate applicants for a license.

### 5. Whether the Behavior is Already a Crime

■ The behavior of making false statements on an application for an alcoholic beverage license is also a crime. *See* TEX. ALCO. BEV.CODE ANN. § 101.69. This fact is insufficient to render the cancellation a criminal punishment. *See Hudson,* —— U.S. at ——, 118 S.Ct. at 496. It is well settled that the legislature "may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

### 6. Whether an Alternative Purpose for the Sanction Exists

■ As noted above, the Commission's power to cancel licenses does not merely punish license-holders; it also serves to protect the public and to assist the Commission in effectively regulating the sale of alcoholic beverages. A review of the other statutory grounds for canceling a license makes these alternative purposes clear. *See* TEX. ALCO. BEV.CODE ANN. § 61.71(a) (authorizing cancellation for, among other things, selling alcohol to a minor or an intoxicated person, permitting lewd or immoral conduct on the premises, or interfering with an inspection of the premises).

### 7. Whether the Sanction is Excessive

■ Sheridan notes that although the Commission had the option of imposing only a sixty-day suspension, it chose instead to cancel his license. Relying on *Tharp v. State,* he argues that this sanction is excessive in relation to the goals of protecting the public and effectively regulating the sale of alcoholic beverages. *See* 935 S.W.2d 157 (Tex.Crim.App.1996). In *Tharp,* the court of criminal appeals held that a sixty-day suspension of a driver's license was a "relatively

mild sanction" that did not exceed what was reasonably necessary to keep dangerous drivers off the road. 935 S.W.2d at 160. Although the sanction imposed here is more severe than the one imposed in *Tharp,* it is not so disproportionate to Sheridan's act— falsely stating that he had not been convicted of a felony in the last three years—as to render the sanction a criminal punishment.

Having reviewed the *Hudson* factors, we conclude that Sheridan has not shown by the "clearest proof" that the cancellation of his alcoholic beverage license was a criminal punishment. Accordingly, his claim under the Double Jeopardy Clause of the United States Constitution must fail.

## State Constitutional and Statutory Prohibitions Against Double Jeopardy

■ Citing *Bauder v. State,* 921 S.W.2d 696 (Tex.Crim.App.1996), Sheridan argues that the prohibition against double jeopardy found in the Texas Constitution bars his prosecution, even if the federal prohibition does not. *See* TEX. CONST. art. I, § 14. In *Bauder,* our court of criminal appeals held that under the Texas Constitution, a successive prosecution is jeopardy barred after the declaration of a mistrial at the defendant's request, "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." 921 S.W.2d at 699. The state constitution thus provides greater double jeopardy protection than does the federal constitution when prosecutorial misconduct causes a mistrial. *See id.* While citing *Bauder,* Sheridan does not explain why the Texas Double Jeopardy Clause should be construed more broadly than the federal Double Jeopardy Clause in the situation at issue here. Simply because the Texas Constitution provides greater double jeopardy protection in the *Bauder* situation does not mean that a sanction considered to be civil under the federal constitution should be considered criminal under the Texas Constitution. Subsequent to the court of criminal appeals' decision in *Bauder,* several courts, including this one, have rejected attempts to construe the

Texas Constitution more broadly in this regard. *See Voisinet v. State*, 947 S.W.2d 939, 940 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Washington v. State*, 946 S.W.2d 912, 913–14 (Tex.App.—Austin 1997, pet. ref'd); *Ex parte Pitluk*, 940 S.W.2d at 221; *Ex parte Poplin*, 933 S.W.2d 239, 245 (Tex.App.—Dallas 1996, pet. ref'd); *Ex parte Ledbetter*, 925 S.W.2d 283, 284 n. 6 (Tex.App.—Corpus Christi 1996, no pet.).

In *Bauder*, the court deviated from federal jurisprudence in part because it believed the federal test was impractical and difficult to apply. 921 S.W.2d at 699. Sheridan does not suggest that *Hudson* is impractical or difficult to apply, and we have not found it to be so. Sheridan does not propose what the alternative test should be; he merely asserts that the Texas Constitution is broader than the federal one.

■ In addition to relying on *Bauder*, Sheridan notes that in state court, jeopardy may attach at an earlier point than it does in federal court. *See State v. Torres*, 805 S.W.2d 418, 420–21 (Tex.Crim.App.1991) (under the Texas Constitution, jeopardy attaches in a bench trial when both sides have announced ready and the defendant has pled to the charging instrument, whereas under the United States Constitution, jeopardy most likely does not attach until the first witness is sworn); *but see Proctor v. State*, 841 S.W.2d 1, 4 (Tex.Crim.App.1992) ("For the purposes of both our state and federal double jeopardy clauses, jeopardy attaches in a jury trial when the jury is impaneled and sworn."). Like Sheridan's argument regarding *Bauder*, these cases are inapposite. Here, we are not faced with determining the point at which jeopardy attached in a prior criminal trial; rather, we must determine whether an administrative license cancellation acts as a jeopardy bar to a subsequent criminal prosecution. We find nothing in the text of our constitution, in *Bauder*, or in public policy to support Sheridan's argument that this sanction constitutes punishment for purposes of the Texas Double Jeopardy Clause.

■ Finally, Sheridan argues that his prosecution is barred by article 28.13 of the Texas Code of Criminal Procedure, which provides that a "former judgment of acquittal or conviction in a court of competent jurisdiction shall be a bar to any further prosecution for the same offense." TEX.CODE CRIM. PROC. ANN. art. 28.13 (Vernon 1989). Sheridan does not explain how this provision provides him any greater protection than the constitutional prohibitions against double jeopardy. Since he has not been acquitted or convicted by a court of the offense for which he has been indicted, article 28.13 does not apply.

CONCLUSION

The order of the trial court is affirmed.