Opinion issued April 10, 2008 
















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00298-CR

__________


DAMON RICHARD CAPPS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1111629






O P I N I O N

 We deny appellant's motion for rehearing. Tex. R. App. P. 49.3. We withdraw
our January 17, 2008 opinion, substitute this opinion in its place, and vacate our
January 17, 2008 judgment. (1)

 Appellant, Damon Richard Capps, challenges the trial court's order denying
his application for a writ of habeas corpus. (2) In his sole issue, appellant contends that
the State's prosecution of him for misapplication of fiduciary property (3) "following
a final judgment of disbarment against [him] for the same conduct, which contained
punitive monetary penalties, violates the double jeopardy prohibitions contained in
the [Texas] and [United States] Constitutions." (4)

 We affirm the order of the trial court.

Factual and Procedural Background


 On March 10, 2005, the Commission for Lawyer Discipline (the
"Commission"), a committee for the State Bar of Texas, brought a disciplinary action
in a civil district court against appellant. (5) In its disciplinary petition, the Commission
alleged that the complainant, Kimi Clepper, had retained appellant to bring a lawsuit
for the wrongful death of her son and, after the suit was settled for $750,000,
appellant failed to provide the complainant with a settlement statement, failed to
follow the complainant's directions in the scope of representation, and invested the
complainant's funds in property for his own benefit. The Commission further alleged
that appellant violated the Texas Disciplinary Rules of Professional Conduct in the
following ways:1.02(a)(1) Failing to abide by a client's decisions concerning the objectives and general methods of representation;


1.03(a) Failing to keep a client reasonably informed about the
status of a matter and failing to promptly comply with
reasonable request for information;


1.03(b) Failing to explain a matter to the extent reasonably
necessary to permit the client to make informed decisions
regarding the representation;


1.04(d) Entering into a contingent fee agreement prohibited by
paragraph (e) or other law, and/or failing to enter into a
written contingency fee agreement that states the method
by which the fee is to be determined;


1.08(a) Entering into a business transaction with a client;


1.14(a) Failing to hold funds and other property belonging in
whole or part to clients or third persons in a lawyer's
possession separate from the lawyer's own property;


1.14(b) Upon receiving funds or other property in which a client or
third person has an interest, failing to promptly notify the
client or third person;


1.14(c) Failing to keep funds or other property in which both the
lawyer and another person claim interests separate until
there is an accounting and severance of their interests;


3.03(a)(1) Knowingly making a false statement of material fact or law
to a tribunal;


8.01(a) Knowingly making a false statement of material fact in
connection with a disciplinary matter;


8.04(a)(1) A lawyer shall not violate these rules, knowingly assist or
induce another to do so, or do so through the acts of
another, whether or not such violation occurred in the
course of a client-lawyer relationship;


8.04(a)(2) Committing a serious crime or any other criminal act that
reflects adversely on the lawyer's honesty[,]
trustworthiness[,] or fitness as a lawyer in other respect;


8.04(a)(3) Engaging in conduct involving dishonesty, fraud, deceit or
misrepresentation; and


8.04(a)(8) Failing to timely furnish to a district grievance committee
a response or other information as required unless he/she
timely asserts a privilege or other legal ground for failure
to do so.


See Tex. Disciplinary R. Prof'l Conduct 1.02, 1.03, 1.04, 1.08, 1.14, 3.03, 8.01,
and 8.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005
& Supp. 2007). 

 On August 2, 2005, the civil district court granted the Commission's summary
judgment motion, ruling that appellant committed professional misconduct by
violating disciplinary rules 1.04(d), 1.08(a), 1.14(a), 1.14(b), 1.14(c), and 8.04(a)(8). 
See id. At a subsequent sanctions hearing on August 22, 2005, the court further
found that appellant committed professional misconduct by violating, in addition to
the above Texas Disciplinary Rules of Professional Conduct, rules 8.04(a)(2) and
8.04(a)(3). See id. Having found that appellant committed professional misconduct, 
the court determined that "the proper discipline . . . for each act of professional
misconduct" was disbarment. See Tex. R. Disciplinary P. 1.06(V), reprinted in
Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (Vernon 2005). (6) It ordered that
appellant be disbarred and pay the complainant restitution in the amount of $636,000.

 A Harris County grand jury subsequently issued a true bill of indictment,
accusing appellant of committing the offense of misapplication of fiduciary property. 
See Tex. Penal Code Ann. § 32.45 (Vernon Supp. 2007). In accord with section
32.45, (7) the indictment reads,

 [Capps], . . . while a fiduciary, namely, an attorney, intentionally
and knowingly, misappl[ied] property, to wit: money, by dealing with
the property contrary to an agreement under which the defendant held
the property in a manner that involved a substantial risk of loss to [the
complainant], the person for whose benefit the property was held, . . . 
 

 Shortly before his trial for this criminal offense, appellant filed an application
for writ of habeas corpus, contending that his right against double jeopardy precluded
his prosecution. The trial court denied appellant's application. (8)


Double Jeopardy

 In his sole issue, appellant contends that the State's prosecution of him for
misapplication of fiduciary property, "following a final judgment of disbarment
against [him] for the same conduct, which contained punitive monetary penalties,
violates the double jeopardy prohibitions contained in the [Texas] and [United States]
Constitutions." He asserts that the civil district court's award to the complainant of
$636,000 in restitution "was apparently arrived at by taking the net settlement amount
of $745,000, and subtracting what the [a]ppellant had already paid to [the
complainant]." He further asserts,

 It is easy to see that this "restitution" figure goes far beyond what [the
complainant] would have been entitled to under any scenario. First, the
figures used to determine "restitution" in the disbarment proceedings fail
to take into account the contingent fee interest to which [a]ppellant was
entitled under his contract with the [complainant], which was a little
more than $248,000.00. The [complainant] . . . [was] only entitled to
$497,000.00 (2/3 of $745,000.00), less the money that had already been
disbursed to them (around $109,000.00). Thus, the [a]ppellant's real
indebtedness to the [complainant] at the point the disbarment
proceedings concluded was closer to $388,000.00 plus interest, not
$636,000.00 plus interest. 


 Citing Hudson v. United States, appellant argues that because the amount of
restitution that he was ordered to pay in the disciplinary proceedings went "far
beyond what [the complainant] would have been entitled to under any scenario," the
final judgment of disbarment "was so punitive in its effect as to transform the civil
remedy of disbarment into a criminal punishment." See 522 U.S. 93, 118 S. Ct. 488
(1997). Thus, appellant complains that he is being subject to "multiple punishments"
for the same offense.

 The Double Jeopardy Clause of the United States Constitution provides "[n]or
shall any person be subject for the same offense to be twice put in jeopardy of life or
limb." U.S. Const. amend. V, cl. 2. The Double Jeopardy Clause of the Texas
Constitution provides "no person, for the same offense, shall be twice put in jeopardy
of life or liberty, nor shall a person be again put upon trial for the same offense, after
a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. I, § 14. (9)
 
 "There are three distinct types of double jeopardy claims: (1) a second
prosecution for the same offense after acquittal; (2) a second prosecution for the same
offense after conviction; and (3) multiple punishments for the same offense." Langs
v. State, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). All three types of double
jeopardy claims arise only when duplicative prosecutions or punishments involve the
same offense. See id.; see also Ex parte Sheridan, 974 S.W.2d 129, 131 (Tex.
App.--San Antonio 1998, pet. ref'd) ("The Double Jeopardy Clause of the United
States Constitution prohibits multiple punishments for the same offense."). Here, as
noted above, appellant complains that he is being subjected to multiple criminal
punishments.

 In Hudson, the United States Supreme Court explained that "[w]hether a
particular punishment is criminal or civil is, at least initially, a matter of statutory
construction" and that "[a] court must first ask whether the legislature, in establishing
the penalizing mechanism, indicated either expressly or impliedly a preference for
one label or the other." 522 U.S. at 99, 118 S. Ct. at 493 (citations omitted). The
Supreme Court noted, however, that, even in those cases where the legislature has
indicated an intention to establish a civil penalty, a court must inquire further whether
the statutory scheme is so punitive either in purpose or effect as to transform what
was clearly intended as a civil remedy into a criminal penalty. Id. In making this
latter determination, a court should consider (1) whether the sanction involves an
affirmative disability or restraint; (2) whether it has historically been regarded as a
punishment; (3) whether it comes into play only on a finding of scienter; (4) whether
its operation will promote the traditional aims of punishment--retribution and
deterrence; (5) whether the behavior to which it applies is already a crime; (6)
whether an alternative purpose to which it may rationally be connected is assignable
for it; and (7) whether it appears excessive in relation to the alternative purpose
assigned. Id. at 99-100 (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69,
83 S. Ct. 554, 567-68 (1963)); see also Ex parte Sheridan, 974 S.W.2d at 132
(applying Hudson factors and finding that cancellation of alcoholic beverage license
by Texas Alcohol and Beverage Commission did not constitute punishment and, thus,
double jeopardy protections did not bar license holder's subsequent prosecution for
his making of false statements on license application). However, "these factors must
be considered in relation to the statute on its face, and only the clearest proof will
suffice to override legislative intent and transform what has been denominated a civil
remedy into a criminal penalty." Hudson, 522 U.S. at 100, 118 S. Ct. at 493 
(citations omitted).

 It is well-settled that attorney disciplinary actions in Texas are "civil in nature."
State Bar of Texas v. Evans, 774 S.W.2d 656, 657 n.1 (Tex. 1989); see also Comm'n
for Lawyer Discipline v. Benton, 980 S.W.2d 425, 454 (Tex. 1998). In fact, the Texas
Rules of Disciplinary Procedure expressly provide that "[d]isciplinary actions are
civil in nature" and that, except as otherwise varied, the Texas Rules of Civil
Procedure apply to disciplinary actions. Tex. R. Disciplinary P. 3.08. The Texas
Rules of Disciplinary Procedure also specifically contemplate that an attorney who
is subject to disciplinary actions under the Texas Disciplinary Rules of Professional
Conduct may also be subjected to criminal prosecution for the same conduct. Tex.
R. Disciplinary P. 3.08(E) ("The parties to a Disciplinary Action may not seek
abatement or delay of trial because of substantial similarity to the material allegations
in any other pending civil or criminal case."). 

 The Texas Government Code provides that attorneys admitted to practice in
Texas are subject to the disciplinary and disability jurisdiction of the supreme court
and the Commission. Tex. Gov't Code Ann. § 81.071 (Vernon 2005); Tex. R.
Disciplinary P. 1.06(C). A disciplinary action is filed neither by the State nor a
private litigant, but rather by the Commission. Acevedo v. Comm'n for Lawyer
Discipline, 131 S.W.3d 99, 104 (Tex. App.--San Antonio 2004, pet. denied). In
filing such actions, the Commission does not seek to redress a private wrong or a
violation of the penal code, but instead seeks to hold a lawyer accountable for his
professional misconduct. Id. In accord with the Texas Rules of Disciplinary
Procedure, the Government Code makes clear that attorneys may be subject to
criminal prosecution and disciplinary action for the same conduct. See Tex. Gov't
Code Ann. § 81.078(c), (d), (f) (Vernon 2005) ("On proof of final conviction of any
felony involving moral turpitude or any misdemeanor involving theft, embezzlement,
or fraudulent misappropriation of money or other property, the district court of the
county of the residence of the convicted attorney shall enter an order disbarring the
attorney"; "In an action to disbar any attorney for acts made the basis of a conviction
for a felony involving moral turpitude or a misdemeanor involving theft,
embezzlement, or fraudulent misappropriation of money or other property, the record
of conviction is conclusive evidence of the guilt of the attorney for the crime of which
he was convicted"; "This chapter does not prevent prosecution of an attorney in a
disciplinary action after conviction for a criminal act based either on the weight of the
conviction or on conduct by the attorney that led to the attorney's conviction."). (10) 
 Thus, the legislature has expressly labeled disciplinary proceedings as civil. 
See Hudson, 522 U.S. at 103, 118 S. Ct. at 495; see also Grotti v. State, 209 S.W.3d
747, 780 (Tex. App.--Fort Worth 2006, pet. granted on other grounds) (noting that
legislature clearly did not intend for disciplinary proceedings initiated against doctor
to bar criminal prosecution).

 Turning to the Hudson factors, we conclude that "there is little evidence, much
less the clearest proof," that the disciplinary rules appellant was accused and found
guilty of violating and the final judgment of disbarment sanctioning appellant were
so punitive either in purpose or effect as to transform the disciplinary actions and
sanctions into a criminal penalty. See Hudson, 522 U.S. at 104, 118 S. Ct. at 495. 
First, the disciplinary action and the sanctions imposed (disbarment and restitution)
did not involve an affirmative disability or restraint. See id. at 104, 188 S. Ct. at
495-96 (noting that monetary penalties and occupational debarment sanction imposed
by administrative agency against bank officers for their misapplication of bank funds
were "certainly nothing approaching the infamous punishment of imprisonment" and,
thus, did not involve affirmative disability or restraint); Ex parte Sheridan, 974
S.W.2d at 133 (stating that "cancellation of a license to engage in a particular
business is not an affirmative disability or restraint"); see also In re Cardwell, 50
P.3d 897, 904 (Colo. 2002) (stating that a "suspension or disbarment from the
practice of law" was not an affirmative disability or restraint).

 Second, neither monetary restitution nor disbarment has historically been
viewed as "punishment" as it has "long [been] recognized that revocation of a
privilege voluntarily granted . . . is characteristically free of the punitive criminal
element." See Hudson, 522 U.S. at 104, 118 S. Ct. at 495-96; Ex parte Sheridan, 974
S.W.2d at 133; In re Cardwell, 50 P.3d at 904. In regard to appellant's complaint that
the civil district court's award of restitution went "far beyond what [the complainant]
would have been entitled to under any scenario," and "fail[ed] to take into account
[his] contingent fee interest," we note that the Texas Supreme Court has held that in
appropriate circumstances, a client, without proving actual damages, may be able to
obtain forfeiture of all or part of an attorney's fee for the attorney's breach of
fiduciary duty to the client. See Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999). 
The primary point is:

 The remedy of fee forfeiture presupposes that a lawyer's clear and
serious violation of a duty to a client destroys or severely impairs the
client-lawyer relationship and thereby the lawyer's claim to
compensation. 


Id. (quoting Restatement (Third) of the Law Governing Lawyers § 49
comment b (1996)). Thus, the civil district court could have reasonably concluded
that appellant's breach of his fiduciary duties to his client destroyed the client-attorney relationship and, therefore, appellant was simply not entitled to any fee. (11) 
 Third, appellant was accused and found guilty of violating numerous
disciplinary rules, some requiring a finding of scienter and some not. See Tex.
Disciplinary R. Prof'l Conduct 1.02, 1.03, 1.04, 1.08, 1.14, 3.03, 8.01, and 8.04;
Tex. R. Disciplinary P. 1.06(V). But there is no general requirement of scienter in
the disciplinary rules. See Hudson, 522 U.S. at 104-05, 118 S. Ct. at 496 (noting that
sanctions imposed against bank officers, including debarment, did not "come into
play 'only' on a finding of scienter"); Ex parte Sheridan, 974 S.W.2d at 133 (noting
that of 32 alternative statutory grounds for cancellation of alcoholic beverage license
under which license was cancelled, only three of those grounds required culpable
mental state, and ground on which actual cancellation was based did not require
finding of culpable mental state); But see In re Cardwell, 50 P.3d at 904 (noting that
"[i]n the absence of a history of disciplinary violations or other very serious
aggravating factors, the sanctions of suspension and disbarment typically require that
the lawyer's state of mind be knowing or intentional"). While it may be true that
appellant's culpable mental state was considered by the court in rendering its final
judgment of disbarment, nothing in the rules provides for disbarment or restitution
for only specific violations that involve an element of scienter. See Tex. R.
Disciplinary P. 3.09-3.12.

 Fourth, although disciplinary actions and sanctions may offer some amount of
deterrence (12)--a traditional goal of criminal punishment--the mere presence of this
purpose is insufficient to render disciplinary actions and the resulting sanctions
criminal. See Hudson, 522 U.S. at 105, 118 S. Ct. at 496. 

 Fifth, although the conduct for which disciplinary actions are brought and
sanctions are imposed may also be criminal, this fact is insufficient to render the
sanctions "criminally punitive." See id.; see also Ex parte Sheridan, 974 S.W.2d at
134 ("It is well settled that the legislature may impose both a criminal and a civil
sanction in respect to the same act or omission."). 

 Finally, as noted above, disciplinary actions are brought and sanctions are
imposed to "hold a lawyer accountable for his professional misconduct." Acevedo,
131 S.W.3d at 104. Additionally, in assessing an appropriate sanction, a court may
consider a number of factors, including protecting those who seek legal services from
professional misconduct and maintaining respect for the legal profession. See Tex.
R. Disciplinary P. 3.10. Thus, we conclude that the disciplinary actions and
resulting sanctions are not excessive in regard to these alternative purposes. See Ex
parte Sheridan, 974 S.W.2d at 134; In re Cardwell, 50 P.3d at 904.

 In sum, there is no proof, much less the clearest proof, that the disciplinary
actions and resulting sanctions impose criminal punishment. Accordingly, we hold
that the State's prosecution of appellant for misapplication of fiduciary property does
not violate the double jeopardy prohibitions contained in the United States and Texas
Constitutions.

Conclusion


 We affirm the order of the trial court. 


 

 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.


Publish. Tex. R. App. P. 47.2(b).
1. Here, appellant timely filed a motion for rehearing and motion for en banc
consideration. "When a party timely files both a motion for rehearing or further
rehearing and a motion for en banc reconsideration, it has long been the practice of
this Court to present the motion for rehearing or further rehearing to the original panel
of justices who heard the case; if the panel denies rehearing or further rehearing, as
here, the motion for en banc reconsideration is then presented to the en banc Court." 
Brookshire Brothers, Inc. v. Smith, 176 S.W.3d 30, 41 (Tex. App.--Houston [1st
Dist.] 2004, pet denied) (citing Butler v. State, 6 S.W.3d 636, 637 & n.1 (Tex.
App.--Houston [1st Dist.] 1999, pet. ref'd)). The panel voted to deny appellant's
motion for rehearing, the motion for en banc consideration was presented to the en
banc Court, and the en banc Court denied reconsideration en banc. See Tex. R. App.
P. 49.7.
2. See Tex. Code Crim. Proc. Ann. art. 11.04 (Vernon 2005).
3. See Tex. Penal Code Ann. § 32.45 (Vernon Supp. 2007).
4. See U.S. Const. amend. V; Tex. Const. art. I, § 14. 
5. Comm'n for Lawyer Discipline v. Capps, No. 2004-62247 (11th Dist. Ct., Harris
County, Tex.).
6. Rule 1.06(V) defines "professional misconduct" to include, among other things,
"[a]cts or omissions by an attorney, individually or in concert, with another person or
persons, that violate one or more of the Texas Disciplinary Rules of Professional
Conduct." Tex. R. Disciplinary P. 1.06(V), reprinted in Tex. Gov't Code Ann.,
tit. 2, subtit. G app. A-1 (Vernon 2005).
7. A person commits an offense of misapplication of fiduciary property "if he
intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . .
in a manner that involves substantial risk of loss to the owner of the property or to a
person for whose benefit the property is held." See Tex. Penal Code Ann.
§ 32.45(b) (Vernon Supp. 2007). 
8. Upon filing his appeal, appellant also filed a motion to stay the State's prosecution of
him pending the outcome of this appeal. On April 16, 2007, we issued an order
noting the general rule that "[w]hen a movant has appealed the trial court's denial of
his double jeopardy claim, the movant is entitled to a stay of further proceedings
unless his double jeopardy claim is frivolous." See, e.g., Williams v. White, 856
S.W.2d 847, 848 (Tex. App.--Fort Worth 1993, no writ). Because the trial court, in
its judgment, simply denied appellant's application and did not make an express
finding that appellant's application was frivolous, we granted appellant's motion. The
following day, the State filed a motion for rehearing in this Court, asking us to
reconsider our ruling granting the stay. The State also attached an amended order
from the trial court, dated April 17, 2007, which contained a finding that the
application was in fact frivolous. With our opinion and judgment today, the State's
motion for rehearing of this Court's stay order is dismissed as moot.
9. The Texas Constitution has been construed to give no greater protection than the
United States Constitution in regard to double jeopardy. Johnson v. State, 920 S.W.2d
692, 693 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd) (citing Stephens v. State,
806 S.W.2d 812, 815 (Tex. Crim. App. 1990)). Thus, a bifurcated analysis is not
necessary. Id.

10. See also Tex. Gov't Code Ann. § 82.062 (Vernon 2005) (providing that "[a]ny
attorney who is guilty of barratry, any fraudulent or dishonorable conduct, or
malpractice may be suspended from practice, or the attorney's license may be
revoked, by a district court of the county in which the attorney resides or in which the
act complained of occurred" and that "[a]n attorney may be suspended from practice
or the attorney's license may be revoked under this section regardless of the fact that
the act complained of may be an offense under the Penal Code and regardless of
whether the attorney is being prosecuted for or has been convicted of the offense").
(Emphasis added.) 
11. In his briefing, appellant asserts that Kimi Clepper, the complainant, was "only one
of three plaintiffs in the case involving the death of her son (the other two being her
other son . . . and the estate of her late son)." Appellant states that "presumably some
of the money that appellant allegedly misappropriated belonged to those other
plaintiffs." However, appellant concedes that the "precise amount of restitution that
was owed" to Kimi Clepper was "unclear." Appellant has not established that Kimi
Clepper's receipt of restitution, individually, and the disgorgement of his fees resulted
in a criminal punishment.
12. See Tex. R. Disciplinary P. 3.10 (noting that court should consider deterrent effect
on others in determining appropriate sanction).