**Damon Richard CAPPS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–07–00298–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 10, 2008.

Discretionary Review Refused Sept. 24, 2008.

Rehearing Overruled May 6, 2008.

Paul Nugent, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

TERRY JENNINGS, Justice.

We deny appellant's motion for rehearing. Tex.R.App. P. 49.3. We withdraw our

January 17, 2008 opinion, substitute this opinion in its place, and vacate our January 17, 2008 judgment.[1]

Appellant, Damon Richard Capps, challenges the trial court's order denying his application for a writ of habeas corpus.[2] In his sole issue, appellant contends that the State's prosecution of him for misapplication of fiduciary property[3] "following a final judgment of disbarment against [him] for the same conduct, which contained punitive monetary penalties, violates the double jeopardy prohibitions contained in the [Texas] and [United States] Constitutions."[4]

We affirm the order of the trial court.

### Factual and Procedural Background

On March 10, 2005, the Commission for Lawyer Discipline (the "Commission"), a committee for the State Bar of Texas, brought a disciplinary action in a civil district court against appellant.[5] In its disciplinary petition, the Commission alleged that the complainant, Kimi Clepper, had retained appellant to bring a lawsuit for the wrongful death of her son and, after the suit was settled for $750,000, appellant failed to provide the complainant with a settlement statement, failed to follow the complainant's directions in the scope of representation, and invested the complainant's funds in property for his own benefit. The Commission further alleged that appellant violated the Texas Disciplinary Rules of Professional Conduct in the following ways:

  1.02(a)(1) Failing to abide by a client's decisions concerning the objectives and general methods of representation;

  1.03(a) Failing to keep a client reasonably informed about the status of a matter and failing to promptly comply with reasonable request for information;

  1.03(b) Failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;

  1.04(d) Entering into a contingent fee agreement prohibited by paragraph (e) or other law, and/or failing to enter into a written contingency fee agreement that states the method by which the fee is to be determined;

  1.08(a) Entering into a business transaction with a client;

  1.14(a) Failing to hold funds and other property belonging in whole or part to clients or third persons in a lawyer's

---

1. Here, appellant timely filed a motion for rehearing and motion for en banc consideration. "When a party timely files both a motion for rehearing or further rehearing and a motion for en banc reconsideration, it has long been the practice of this Court to present the motion for rehearing or further rehearing to the original panel of justices who heard the case; if the panel denies rehearing or further rehearing, as here, the motion for en banc reconsideration is then presented to the en banc Court." *Brookshire Brothers, Inc. v. Smith*, 176 S.W.3d 30, 41 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (citing *Butler v. State*, 6 S.W.3d 636, 637 & n. 1 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd)). The panel voted to deny appellant's motion for rehearing, the motion for en banc consideration was presented to the en banc Court, and the en banc Court denied reconsideration en banc. *See* TEX.R.APP. P. 49.7.

2. *See* TEX.CODE CRIM. PROC. ANN. art. 11.04 (Vernon 2005).

3. *See* TEX. PENAL CODE ANN. § 32.45 (Vernon Supp.2007).

4. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 14.

5. *Comm'n for Lawyer Discipline v. Capps*, No.2004–62247 (11th Dist. Ct., Harris County, Tex.).

possession separate from the lawyer's own property;

1.14(b) Upon receiving funds or other property in which a client or third person has an interest, failing to promptly notify the client or third person;

1.14(c) Failing to keep funds or other property in which both the lawyer and another person claim interests separate until there is an accounting and severance of their interests;

3.03(a)(1) Knowingly making a false statement of material fact or law to a tribunal;

8.01(a) Knowingly making a false statement of material fact in connection with a disciplinary matter;

8.04(a)(1) A lawyer shall not violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not such violation occurred in the course of a client-lawyer relationship;

8.04(a)(2) Committing a serious crime or any other criminal act that reflects adversely on the lawyer's honesty[,] trustworthiness[,] or fitness as a lawyer in other respect;

8.04(a)(3) Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and

8.04(a)(8) Failing to timely furnish to a district grievance committee a response or other information as required unless he/she timely asserts a privilege or other legal ground for failure to do so.

*See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02, 1.03, 1.04, 1.08, 1.14, 3.03, 8.01, and 8.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005 & Supp. 2007).

On August 2, 2005, the civil district court granted the Commission's summary judgment motion, ruling that appellant committed professional misconduct by violating disciplinary rules 1.04(d), 1.08(a), 1.14(a), 1.14(b), 1.14(c), and 8.04(a)(8). *See id.* At a subsequent sanctions hearing on August 22, 2005, the court further found that appellant committed professional misconduct by violating, in addition to the above Texas Disciplinary Rules of Professional Conduct, rules 8.04(a)(2) and 8.04(a)(3). *See id.* Having found that appellant committed professional misconduct, the court determined that "the proper discipline ... for each act of professional misconduct" was disbarment. *See* TEX.R. DISCIPLINARY P. 1.06(V), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005).[6] It ordered that appellant be disbarred and pay the complainant restitution in the amount of $636,000.

A Harris County grand jury subsequently issued a true bill of indictment, accusing appellant of committing the offense of misapplication of fiduciary property. *See* TEX. PENAL CODE ANN. § 32.45 (Vernon Supp. 2007). In accord with section 32.45,[7] the indictment reads,

---

**6.** Rule 1.06(V) defines "professional misconduct" to include, among other things, "[a]cts or omissions by an attorney, individually or in concert, with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct." TEX.R. DISCIPLINARY P. 1.06(V), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005).

**7.** A person commits an offense of misapplication of fiduciary property "if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary ... in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." *See* TEX. PENAL CODE ANN. § 32.45(b) (Vernon Supp.2007).

[Capps], ... while a fiduciary, namely, an attorney, intentionally and knowingly, misappl[ied] property, to wit: money, by dealing with the property contrary to an agreement under which the defendant held the property in a manner that involved a substantial risk of loss to [the complainant], the person for whose benefit the property was held, ...

Shortly before his trial for this criminal offense, appellant filed an application for writ of habeas corpus, contending that his right against double jeopardy precluded his prosecution. The trial court denied appellant's application.[8]

## Double Jeopardy

■ In his sole issue, appellant contends that the State's prosecution of him for misapplication of fiduciary property, "following a final judgment of disbarment against [him] for the same conduct, which contained punitive monetary penalties, violates the double jeopardy prohibitions contained in the [Texas] and [United States] Constitutions." He asserts that the civil district court's award to the complainant of $636,000 in restitution "was apparently arrived at by taking the net settlement amount of $745,000, and subtracting what the [a]ppellant had already paid to [the complainant]." He further asserts,

It is easy to see that this "restitution" figure goes far beyond what [the complainant] would have been entitled to under any scenario. First, the figures

used to determine "restitution" in the disbarment proceedings fail to take into account the contingent fee interest to which [a]ppellant was entitled under his contract with the [complainant], which was a little more than $248,000.00. The [complainant] ... [was] only entitled to $497,000.00 (2/3 of $745,000.00), less the money that had already been disbursed to them (around $109,000.00). Thus, the [a]ppellant's real indebtedness to the [complainant] at the point the disbarment proceedings concluded was closer to $388,000.00 plus interest, not $636,000.00 plus interest.

Citing *Hudson v. United States,* appellant argues that because the amount of restitution that he was ordered to pay in the disciplinary proceedings went "far beyond what [the complainant] would have been entitled to under any scenario," the final judgment of disbarment "was so punitive in its effect as to transform the civil remedy of disbarment into a criminal punishment." *See* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Thus, appellant complains that he is being subject to "multiple punishments" for the same offense.

The Double Jeopardy Clause of the United States Constitution provides "[n]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V, cl. 2. The Double Jeopardy Clause of the Texas Constitution provides "no person, for the

8. Upon filing his appeal, appellant also filed a motion to stay the State's prosecution of him pending the outcome of this appeal. On April 16, 2007, we issued an order noting the general rule that "[w]hen a movant has appealed the trial court's denial of his double jeopardy claim, the movant is entitled to a stay of further proceedings unless his double jeopardy claim is frivolous." *See, e.g., Williams v. White,* 856 S.W.2d 847, 848 (Tex.App.-Fort Worth 1993, no writ). Because the trial court, in its judgment, simply denied appel-

lant's application and did not make an express finding that appellant's application was frivolous, we granted appellant's motion. The following day, the State filed a motion for rehearing in this Court, asking us to reconsider our ruling granting the stay. The State also attached an amended order from the trial court, dated April 17, 2007, which contained a finding that the application was in fact frivolous. With our opinion and judgment today, the State's motion for rehearing of this Court's stay order is dismissed as moot.

same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14.[9]

■■■ "There are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim.App.2006). All three types of double jeopardy claims arise only when duplicative prosecutions or punishments involve the same offense. *See id.; see also Ex parte Sheridan*, 974 S.W.2d 129, 131 (Tex. App.-San Antonio 1998, pet. ref'd) ("The Double Jeopardy Clause of the United States Constitution prohibits multiple punishments for the same offense."). Here, as noted above, appellant complains that he is being subjected to multiple criminal punishments.

■■■ In *Hudson*, the United States Supreme Court explained that "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction" and that "[a] court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." 522 U.S. at 99, 118 S.Ct. at 493 (citations omitted). The Supreme Court noted, however, that, even in those cases where the legislature has indicated an intention to establish a civil penalty, a court must inquire further whether the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into

a criminal penalty. *Id.* In making this latter determination, a court should consider (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *Id.* at 99–100, 118 S.Ct. 488 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963)); *see also Ex parte Sheridan*, 974 S.W.2d at 132 (applying *Hudson* factors and finding that cancellation of alcoholic beverage license by Texas Alcohol and Beverage Commission did not constitute punishment and, thus, double jeopardy protections did not bar license holder's subsequent prosecution for his making of false statements on license application). However, "these factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100, 118 S.Ct. at 493 (citations omitted).

■■ It is well-settled that attorney disciplinary actions in Texas are "civil in nature." *State Bar of Texas v. Evans*, 774 S.W.2d 656, 657 n. 1 (Tex.1989); *see also Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 454 (Tex.1998). In fact, the Texas Rules of Disciplinary Procedure

9. The Texas Constitution has been construed to give no greater protection than the United States Constitution in regard to double jeopardy. *Johnson v. State*, 920 S.W.2d 692, 693

(Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (citing *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990)). Thus, a bifurcated analysis is not necessary. *Id.*

expressly provide that "[d]isciplinary actions are civil in nature" and that, except as otherwise varied, the Texas Rules of Civil Procedure apply to disciplinary actions. TEX.R. DISCIPLINARY P. 3.08. The Texas Rules of Disciplinary Procedure also specifically contemplate that an attorney who is subject to disciplinary actions under the Texas Disciplinary Rules of Professional Conduct may also be subjected to criminal prosecution for the same conduct. TEX.R. DISCIPLINARY P. 3.08(E) ("The parties to a Disciplinary Action may not seek abatement or delay of trial because of substantial similarity to the material allegations in any other pending civil or criminal case.").

The Texas Government Code provides that attorneys admitted to practice in Texas are subject to the disciplinary and disability jurisdiction of the supreme court and the Commission. TEX. GOV'T CODE ANN. § 81.071 (Vernon 2005); TEX.R. DISCIPLINARY P. 1.06(C). A disciplinary action is filed neither by the State nor a private litigant, but rather by the Commission. *Acevedo v. Comm'n for Lawyer Discipline,* 131 S.W.3d 99, 104 (Tex.App.-San Antonio 2004, pet. denied). In filing such actions, the Commission does not seek to redress a private wrong or a violation of the penal code, but instead seeks to hold a lawyer accountable for his professional misconduct. *Id.* In accord with the Texas Rules of Disciplinary Procedure, the Government Code makes clear that attorneys may be subject to criminal prosecution and disciplinary action for the same conduct. *See* TEX. GOV'T CODE ANN. § 81.078(c), (d),

(f) (Vernon 2005) ("On proof of final conviction of any felony involving moral turpitude or any misdemeanor involving theft, embezzlement, or fraudulent misappropriation of money or other property, the district court of the county of the residence of the convicted attorney shall enter an order disbarring the attorney"; "In an action to disbar any attorney for acts made the basis of a conviction for a felony involving moral turpitude or a misdemeanor involving theft, embezzlement, or fraudulent misappropriation of money or other property, the record of conviction is conclusive evidence of the guilt of the attorney for the crime of which he was convicted"; "This chapter does not prevent prosecution of an attorney in a disciplinary action after conviction for a criminal act based either on the weight of the conviction or on conduct by the attorney that led to the attorney's conviction.").[10]

Thus, the legislature has expressly labeled disciplinary proceedings as civil. *See Hudson,* 522 U.S. at 103, 118 S.Ct. at 495; *see also Grotti v. State,* 209 S.W.3d 747, 780 (Tex.App.-Fort Worth 2006, pet. granted on other grounds) (noting that legislature clearly did not intend for disciplinary proceedings initiated against doctor to bar criminal prosecution).

Turning to the *Hudson* factors, we conclude that "there is little evidence, much less the clearest proof," that the disciplinary rules appellant was accused and found guilty of violating and the final judgment of disbarment sanctioning appellant were so punitive either in purpose or effect as to transform the disciplinary actions and

---

10. *See also* TEX. GOV'T CODE ANN. § 82.062 (Vernon 2005) (providing that "[a]ny attorney who is guilty of barratry, any fraudulent or dishonorable conduct, or malpractice may be suspended from practice, or the attorney's license may be revoked, by a district court of the county in which the attorney resides or in which the act complained of occurred" and

that "[a]n attorney may be suspended from practice or the attorney's license may be revoked under this section *regardless of the fact that the act complained of may be an offense under the Penal Code and regardless of whether the attorney is being prosecuted for or has been convicted of the offense* "). (Emphasis added.)

sanctions into a criminal penalty. *See Hudson,* 522 U.S. at 104, 118 S.Ct. at 495. First, the disciplinary action and the sanctions imposed (disbarment and restitution) did not involve an affirmative disability or restraint. *See id.* at 104, 118 S.Ct. at 495–96 (noting that monetary penalties and occupational debarment sanction imposed by administrative agency against bank officers for their misapplication of bank funds were "certainly nothing approaching the infamous punishment of imprisonment" and, thus, did not involve affirmative disability or restraint); *Ex parte Sheridan,* 974 S.W.2d at 133 (stating that "cancellation of a license to engage in a particular business is not an affirmative disability or restraint"); *see also In re Cardwell,* 50 P.3d 897, 904 (Colo.2002) (stating that a "suspension or disbarment from the practice of law" was not an affirmative disability or restraint).

Second, neither monetary restitution nor disbarment has historically been viewed as "punishment" as it has "long [been] recognized that revocation of a privilege voluntarily granted ... is characteristically free of the punitive criminal element." *See Hudson,* 522 U.S. at 104, 118 S.Ct. at 495–96; *Ex parte Sheridan,* 974 S.W.2d at 133; *In re Cardwell,* 50 P.3d at 904. In regard to appellant's complaint that the civil district court's award of restitution went "far beyond what [the complainant] would have been entitled to under any scenario," and "fail[ed] to take into account [his] contingent fee interest," we note that the Texas Supreme Court has held that in appropriate circumstances, a client, without proving actual damages, may be able to obtain forfeiture of all or part of an attorney's fee for the attorney's breach of fiduciary duty to the client. *See Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex.1999). The primary point is:

> The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the lawyer's claim to compensation.

*Id.* (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 comment b (1996)). Thus, the civil district court could have reasonably concluded that appellant's breach of his fiduciary duties to his client destroyed the client-attorney relationship and, therefore, appellant was simply not entitled to any fee.[11]

Third, appellant was accused and found guilty of violating numerous disciplinary rules, some requiring a finding of scienter and some not. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02, 1.03, 1.04, 1.08, 1.14, 3.03, 8.01, and 8.04; TEX.R. DISCIPLINARY P. 1.06(V). But there is no general requirement of scienter in the disciplinary rules. *See Hudson,* 522 U.S. at 104–05, 118 S.Ct. at 496 (noting that sanctions imposed against bank officers, including debarment, did not "come into play 'only' on a finding of scienter"); *Ex parte Sheridan,* 974 S.W.2d at 133 (noting that of 32 alternative statutory grounds for cancellation of alcoholic beverage license under which license was cancelled, only three of those grounds required culpable mental state, and ground on which actual cancellation was based did not require finding of culpable mental state); *But see In re Cardwell,* 50 P.3d at

---

11. In his briefing, appellant asserts that Kimi Clepper, the complainant, was "only one of three plaintiffs in the case involving the death of her son (the other two being her other son ... and the estate of her late son)." Appellant states that "presumably some of the money that appellant allegedly misappropriated belonged to those other plaintiffs." However, appellant concedes that the "precise amount of restitution that was owed" to Kimi Clepper was "unclear." Appellant has not established that Kimi Clepper's receipt of restitution, individually, and the disgorgement of his fees resulted in a criminal punishment.

904 (noting that "[i]n the absence of a history of disciplinary violations or other very serious aggravating factors, the sanctions of suspension and disbarment typically require that the lawyer's state of mind be knowing or intentional"). While it may be true that appellant's culpable mental state was considered by the court in rendering its final judgment of disbarment, nothing in the rules provides for disbarment or restitution for only specific violations that involve an element of scienter. *See* TEX.R. DISCIPLINARY P. 3.09–3.12.

Fourth, although disciplinary actions and sanctions may offer some amount of deterrence [12]—a traditional goal of criminal punishment—the mere presence of this purpose is insufficient to render disciplinary actions and the resulting sanctions criminal. *See Hudson,* 522 U.S. at 105, 118 S.Ct. at 496.

■ Fifth, although the conduct for which disciplinary actions are brought and sanctions are imposed may also be criminal, this fact is insufficient to render the sanctions "criminally punitive." *See id.; see also Ex parte Sheridan,* 974 S.W.2d at 134 ("It is well settled that the legislature may impose both a criminal and a civil sanction in respect to the same act or omission.").

■ Finally, as noted above, disciplinary actions are brought and sanctions are imposed to "hold a lawyer accountable for his professional misconduct." *Acevedo,* 131 S.W.3d at 104. Additionally, in assessing an appropriate sanction, a court may consider a number of factors, including protecting those who seek legal services from professional misconduct and maintaining respect for the legal profession. *See* TEX.R. DISCIPLINARY P. 3.10. Thus, we

conclude that the disciplinary actions and resulting sanctions are not excessive in regard to these alternative purposes. *See Ex parte Sheridan,* 974 S.W.2d at 134; *In re Cardwell,* 50 P.3d at 904.

In sum, there is no proof, much less the clearest proof, that the disciplinary actions and resulting sanctions impose criminal punishment. Accordingly, we hold that the State's prosecution of appellant for misapplication of fiduciary property does not violate the double jeopardy prohibitions contained in the United States and Texas Constitutions.

### Conclusion

We affirm the order of the trial court.

---

**12.** *See* TEX.R. DISCIPLINARY P. 3.10 (noting that court should consider deterrent effect on others in determining appropriate sanction).