NUMBER 13-09-282-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THE STATE OF TEXAS, Appellant,


v.



EDUARDO ALMENDAREZ, Appellee.

 


On appeal from the County Court at Law No. 4 

of Nueces County, Texas.

 


OPINION


Before Justices Yañez, Benavides, and Vela


Opinion by Justice Vela



 Appellee, Eduardo Almendarez, was charged by information with two counts of
animal cruelty for the neglect of two horses. See Tex. Penal Code Ann. § 42.09(a)(2)
(Vernon Supp. 2009). Almendarez filed a pre-trial motion to quash the information,
contending that double jeopardy barred his prosecution. He urged that a justice court had,
in a prior hearing, terminated his ownership of the horses and ordered him to pay $211.00
in restitution to Nueces County Animal Control for the expense incurred in seizing both
horses. The trial court granted the motion to quash, and the State appealed (1) to this Court. 
In two issues, the State contends the doctrines of double jeopardy and collateral estoppel
do not bar prosecution of Almendarez for cruelty to animals. (2) We reverse and remand. 

I. Procedural Background


 On May 27, 2008, Ramon Herrera, III, Animal Control Manager for Nueces County
Animal Control, presented an application to Nueces County Justice of the Peace Court,
Precinct 1, Place 1, for a warrant (3) to seize two horses, a black quarter horse mare and a
brown filly, owned by Eduardo Almendarez, because they were "being cruelly treated and
that said [horses have] not been reasonably provided necessary food, care, or shelter. .
. . " The justice court granted the application that same date and set a hearing on the
matter for June 2, 2008. (4) After the hearing, the justice court determined (5) that the brown
filly had been cruelly treated and divested (6) Almendarez of all ownership interest in and right
to the brown filly. The court ordered Almendarez to pay $211.00 in restitution (7) to Nueces
County Animal Control to cover the expenses of the seizure and care of the horses.

 On October 30, 2008, the Nueces County District Attorney's Office filed an
information alleging in Count 1 that Almendarez "did then and there intentionally and
knowingly fail unreasonably to provide necessary FOOD for a HORSE in the defendant's
custody, by NOT PROVIDING FOOD OR WATER." (emphasis in original). In Count 2, the
information alleged that he "did then and there intentionally and knowingly fail
unreasonably to provide necessary FOOD for a FOAL in the defendant's custody, by NOT
PROVIDING FOOD OR WATER." (emphasis in original). Defense counsel filed a motion
to quash the information, contending that the Double Jeopardy Clause of the Fifth
Amendment to the United States Constitution barred prosecution of this case. After a
hearing, the trial court granted the motion to quash.

II. Standard of Review


 In reviewing a trial court's ruling on a motion to quash an information, we apply an
abuse-of-discretion standard. Thomas v. State, 44 S.W.3d 171, 174 (Tex. App.-Houston
[14th Dist.] 2001, no pet.). A trial court abuses its discretion if it acts without reference to
any guiding rules or principles, or acts arbitrarily or unreasonably. Id. (citing Lyles v. State,
850 S.W.2d 497, 502 (Tex. Crim. App. 1993)).

III. Discussion


 In issue one, the State contends double jeopardy does not bar the criminal
prosecution because the penalty ordered by the justice court did not constitute "criminal
punishment" for double-jeopardy purposes. The Double Jeopardy Clause of the Fifth
Amendment to the United States Constitution provides, in relevant part, "[N]or shall any
person be subject for the same offense to be twice put in jeopardy of life or limb." U.S.
Const. amend V, cl. 2. The Double Jeopardy Clause of the Texas Constitution provides,
"[N]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall
a person be again put upon trial for the same offense, after a verdict of not guilty in a court
of competent jurisdiction." (8) Tex. Const. art. 1, § 14. "The Fifth Amendment double
jeopardy clause protects against multiple prosecutions for the 'same offense' following
acquittal or conviction. It also protects against multiple punishments for the 'same
offense.'" Villanueva v. State, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007). "[T]he Double
Jeopardy Clause 'prohibits merely punishing twice, or attempting a second time to punish
criminally, for the same offense.'" Witte v. United States, 515 U.S. 389, 396 (1995)
(quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)) (emphasis in original).

A. Whether Jeopardy Attached At The Justice Court Hearing

 We must first determine whether jeopardy previously attached at the justice court
hearing before examining whether Almendarez's current prosecution for animal cruelty is
barred by a second jeopardy. Ex parte Ward, 964 S.W.2d 617, 625 (Tex. Crim. App.
1998); Ex parte George, 913 S.W.2d 523, 525 (Tex. Crim. App. 1995); see State v.
Moreno, No. PD-0821-08, 2009 WL 3013577, at *2 (Tex. Crim. App. Sept. 23, 2009)
(stating that "jeopardy must have attached initially[]" before double-jeopardy protections are
implicated.); see also Illinois v. Somerville, 410 U.S. 458, 467 (1973) (stating that "the
conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether
the Double Jeopardy Clause bars retrial."). Attachment of jeopardy is necessary because
in order for the principles of double jeopardy to be invoked, there must be a former
jeopardy. Ex parte Ward, 964 S.W.2d at 625. In other words, "an accused must suffer
jeopardy before he can suffer double jeopardy." Serfass v. United States, 420 U.S. 377,
393 (1975) (quoted in Ex parte McAfee, 761 S.W.2d 771, 772 (Tex. Crim. App. 1988)). In
Ex parte George, the court of criminal appeals addressed the doctrine of attachment of
jeopardy:

 [T]he modern development of constitutional jurisprudence makes the
resolution of jeopardy questions depend, in most contexts, upon a doctrine
known as the attachment of jeopardy. Thus, before it can be said that an
accused has been put in jeopardy a second time, in violation of the Texas or
United States Constitution, it must appear that he was actually put in
jeopardy before.


Ex parte George, 913 S.W.2d at 525 (emphasis added). "Thus, determining when
jeopardy attaches is the initial source for examining whether a proceeding is barred as a
second jeopardy." Ex parte Ward, 964 S.W.2d at 625 (emphasis in original).

 Double jeopardy does not bar remedial civil proceedings based on the same offense
as a prior criminal prosecution, or vice versa. State v. Solar, 906 S.W.2d 142, 146 (Tex.
App.-Fort Worth 1995, pet. ref'd); see also One Lot Emerald Cut Stone v. United States,
409 U.S. 232, 235-36 (1972) (per curiam) (stating that Congress may impose both a civil
and a criminal sanction for the same act or omission; double jeopardy clause merely
prohibits attempting to punish criminally for same offense); Malone v. State, 864 S.W.2d
156, 159 (Tex. App.-Fort Worth 1993, no pet.) (stating that trial for termination of parental
rights is a civil proceeding with a remedial result--protecting abused and neglected
children--and does not trigger jeopardy bar to subsequent criminal prosecution for
aggravated sexual assault of child). "[I]n determining whether a criminal prosecution is
barred due to the prohibition against multiple punishments, attachment of jeopardy occurs
in a civil proceeding when punishment is actually imposed." Ex parte Ward, 964 S.W.2d
at 624 n.8 (emphasis in original). If a civil sanction or remedy imposed on a person does
not constitute punishment, a subsequent criminal prosecution of that individual arising out
of the same situation, circumstances, or conduct neither implicates nor violates the
protections against double jeopardy. See, e.g., Ex parte Tharp, 935 S.W.2d 157, 159-61
(Tex. Crim. App. 1996) (holding that an administrative license suspension did not constitute
punishment and therefore did not implicate the protections against double jeopardy in
regard to a subsequent DWI prosecution); Fant v. State, 931 S.W.2d 299, 308-09 (Tex.
Crim. App. 1996) (holding that Texas' civil asset-forfeiture scheme did not constitute
punishment and therefore did not implicate the protections against double jeopardy in
regard to a subsequent prosecution for the offense underlying the asset forfeiture); Capps
v. State, 265 S.W.3d 44, 49 (Tex. App.-Houston [1st Dist.] 2008, pet. ref'd) (concluding
that disciplinary actions brought against attorney did not constitute criminal punishment to
bar subsequent criminal proceedings); Ex parte Sheridan, 974 S.W.2d 129, 131-34 (Tex.
App.-San Antonio 1998, pet. ref'd) (holding that the cancellation of the defendant's
alcoholic beverage license because he lied on the application did not constitute
punishment and therefore did not bar his subsequent prosecution for making false
statements on the application). Here, if the termination of Almendarez's rights to the brown
filly and the order of restitution did not constitute punishment, his subsequent criminal
prosecution arising out of the same conduct neither implicated nor violated the protections
against double jeopardy. See id.; see also Ex parte Ward, 964 S.W.2d at 630 (explaining
that "had jeopardy attached in the civil tax proceeding [for possession of drugs] . . . any
proceeding initiated by the State to prosecute the . . . defendants on the possession of
drugs would have been considered the functional equivalent of a successive prosecution
placing them at risk for a second punishment for the same conduct.") (emphasis in
original).

 "Whether a particular punishment is criminal or civil is, at least initially, a matter of
statutory construction." Hudson v. United States, 522 U.S. 93, 99 (1997) (holding civil suit
resulting in monetary civil penalties for violation of federal banking statutes did not bar later
criminal prosecution). "A court must first ask whether the legislature, in establishing the
penalizing mechanism, indicated either expressly or impliedly a preference for one label
or the other." Id. (internal quotes omitted). 

 The provisions in Subchapter B of Chapter 821 of the Texas Health and Safety
Code, and specifically sections 821.022-023, are civil in nature. See Chambers v. State,
261 S.W.3d 755, 759 (Tex. App.-Dallas 2008, pet. denied) (noting "that the State filed the
animal cruelty case pursuant to chapter 821 of the health and safety code dealing with the
health and safety of animals, not as a crime under the penal code."); Granger v. Folk, 931
S.W.2d 390, 392 (Tex. App.-Beaumont 1996, pet. denied) (stating that "[c]learly, two
avenues exist for the State in protecting animals from cruel treatment, i.e., criminal
prosecution under . . . the [Texas] Penal Code and the civil remedy provided under Section
821.023 of the Health and Safety Code"). (9) In fact, section 821.023 expressly contemplates
the possibility of criminal proceedings brought subsequent to civil proceedings. See Tex.
Health & Safety Code Ann. § 821.023(b) (Vernon Supp. 2009) ("A statement of an owner
made at a hearing provided for under this subchapter is not admissible in a trial of the
owner for an offense under section 42.09 or 42.092, Penal Code."); see also Granger, 931
S.W.2d at 392 (stating that section 821.023(a) "presumes a criminal proceeding prior to
the civil proceeding while [section 821.023(b)] presumes the reverse[]" and that "in the
criminal proceeding, a defendant may face loss of freedom or fine or both, whereas, a
proceeding under section 821.023 may subject the defendant to a loss, forfeiture and
confiscation of property rights and interests.") (footnote omitted).

 Having determined that the intent of section 821.022-023 of the health and safety
code was civil and remedial, and not criminal or punitive, we must now examine "'whether
the statutory scheme [is] so punitive either in purpose or effect as to transform what was
clearly intended as a civil remedy into a criminal penalty.'" Rodriguez v. State, 93 S.W.3d
60, 67 (Tex. Crim. App. 2002) (quoting Hudson, 522 U.S. at 99) (citations and internal
quotation marks omitted). To evaluate whether the effects of the statute are criminally
punitive, courts generally look to the factors set forth by the Supreme Court in Kennedy v.
Mendoza-Martinez, 372 U.S. 144, 169 (1963), and restated by the Court in Hudson (the
"Hudson factors"). Courts consider: (1) "'[w]hether the sanction involves an affirmative
disability or restraint;'" (2) "'whether it has historically been regarded as a punishment;'" (3)
"'whether it comes into play only on a finding of scienter;'" (4) "'whether its operation will
promote the traditional aims of punishment-retribution and deterrence;'" (5) "'whether the
behavior to which it applies is already a crime;'" (6) "'whether an alternative purpose to
which it may rationally be connected is assignable for it;'" and (7) "'whether it appears
excessive in relation to the alternative purpose assigned.'" Hudson, 522 U.S. at 99-100
(quoting Kennedy, 372 U.S. at 168-69). "'[T]hese factors must be considered in relation
to the statute on its face, and only the clearest proof will suffice to override legislative intent
and transform what has been denominated a civil remedy into a criminal penalty." Id. at
100 (quoting United States v. Ward, 448 U.S. 242, 249 (1980)) (internal quotation marks
omitted). "In reviewing the double jeopardy claim raised in Hudson, the Court explained
that the factors are 'useful guideposts' but that none are dispositive." Rodriguez, 93
S.W.3d at 68 (quoting Hudson, 522 U.S. at 99).

B. Application Of The Hudson Factors

1. Whether The Sanction Involved An Affirmative Disability Or Restraint


 In Hudson, the Supreme Court held that occupational disbarment and the imposition
of monetary fines "do not involve an 'affirmative disability or restraint,' as that term is
normally understood. While petitioners have been prohibited from further participating in
the banking industry, this is certainly nothing approaching the infamous punishment of
imprisonment." 522 U.S. at 104 (citing Flemming v. Nestor, 363 U.S. 603, 617 (1960))
(internal quotation marks partially omitted). Here, the sanctions (termination of ownership
rights in the brown filly and payment of $211.00 in restitution) did not involve an affirmative
disability or restraint against Almendarez. See id. (10)

2. Whether The Sanction Has Historically Been Regarded As A Punishment


 Monetary restitution has not historically been viewed as punishment in the double-jeopardy context. See Capps, 265 S.W.3d at 51 (stating that "neither monetary restitution
nor disbarment has historically been viewed as 'punishment'. . . .") (citing Hudson, 522 U.S.
at 104); Ex parte Lozano, 982 S.W.2d 511, 513 (Tex. App.-San Antonio 1998, no pet.)
(stating that "[a] civil penalty is considered remedial if its purpose is merely to reimburse
the government for damages sustained as a result of the defendant's criminal conduct."). 
With respect to the termination of Almendarez's ownership rights in the brown filly, both the
United States Supreme Court and this Court have stated that civil forfeitures do not
constitute punishment for double-jeopardy purposes. See United States v. Ursery, 518
U.S. 267 (1996) (concluding that federal civil forfeitures do not constitute punishment for
double-jeopardy purposes because they are civil in rem proceedings which are neither
punitive nor criminal in nature); Ex parte Torres, 941 S.W.2d 219, 221 (Tex. App.-Corpus
Christi 1996, no pet.) (explaining that "in enacting the forfeiture statutes, the [Texas]
Legislature intended forfeitures to be civil proceedings, remedial in nature, and not a form
of punishment."). (11) We note the sanctions imposed here are no more serious than "those
quasi-administrative adjuncts of a criminal sentence that have not traditionally been
considered criminal sanctions: for example, the loss of voting privileges, license
suspensions or revocations as well as the . . . dissemination of rap sheet information." 
Rodriguez, 93 S.W.3d at 72.

3. Whether The Sanction Comes Into Play Only On A Finding Of Scienter


 There is no general requirement of scienter (culpable mental state) under Chapter
821 of the health and safety code, and a finding of scienter is not required in order for a
court to divest an owner of his or her rights in animals or to order restitution. See Tex.
Health & Safety Code Ann. § 821.022-023 (Vernon Supp. 2009). While the justice court
may have considered Almendarez's culpable mental state in rendering its order of
termination and restitution, nothing in section 821.023 provides for termination or restitution
that involves an element of scienter. See id.; (12) Cf. Hudson, 522 U.S. at 104 (no finding of
scienter required when provisions allowed for assessment of a penalty against any person
"who violates" any of the underlying banking statutes).

4. Whether The Sanction's Operation Will Promote The Traditional Aims Of Punishment-Retribution And Deterrence


 When a statute promotes the traditional aims of punishment--retribution and
deterrence--its effect is more likely to be considered punitive. Rodriguez, 93 S.W.3d at
73 (citing Hudson, 522 U.S. at 104). "The existence of a deterrent effect alone, however,
will generally be insufficient to transform a civil sanction into a criminal one." Id. (citing
Hudson, 522 U.S. at 105). Courts must always assess this factor with an eye to the
statute's stated aims. Id. When the legislature has not manifested an intent to promote
the traditional aims of punishment, it behooves us to refrain from searching for one in the
statute's indirect effects. Id. The conduct that led to the sanctions against Almendarez
formed the basis for the subsequent criminal prosecution against him. However, this fact
is insufficient to render the sanctions "criminally punitive." See Hudson, 522 U.S. at 105
(explaining that the conduct for which sanctions are imposed, even if the conduct formed
the basis for an indictment, is insufficient to render the sanctions "criminally punitive,
particularly in the double jeopardy context[.]") (citation omitted). The Hudson Court
recognized that while the imposition of "sanctions will deter others from emulating
petitioners' conduct, a traditional goal of criminal punishment[,] . . . the mere presence of
this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as
well as criminal goals.'" Id. (quoting Ursery, 518 U.S. at 292). The retributive and deterrent
effects of section 821.022-023 of the health and safety code are incidental, and not
primary, to the statute's operation and, therefore, militate towards nonpunitive intent. (13) See
Rodriguez, 93 S.W.3d at 74 (stating that when a statute's "retributive and deterrent effects
. . . are incidental, and not primary, to the statute's operation[,] . . . we . . . weigh this factor
in favor of nonpunitive intent.").

5. Whether The Behavior To Which The Sanction Applies Is Already A Crime


 "A statute that applies to behavior that is already a crime is more likely to be
characterized as a criminal sanction." Id. However, the Supreme Court has noted that this
factor alone is insufficient to render sanctions criminally punitive. Hudson, 522 U.S. at 105. 
Even though the cruel treatment of animals may lead to prosecution under the Texas Penal
Code, "this fact is insufficient to render" the remedies afforded under section 821.023 as
criminally punitive. See Ex parte Sheridan, 974 S.W.2d at 134 ("It is well settled that the
legislature 'may impose both a criminal and a civil sanction in respect to the same act or
omission.'") (quoting Helvering, 303 U.S. at 399). (14)

6. Whether An Alternative Purpose To Which The Sanction May Rationally Be Connected
Is Assignable For It


 "Under this factor, we inquire whether there is an alternative, nonpunitive purpose
that may rationally be connected to the statute." Rodriguez, 93 S.W.3d at 74 (citing
Kennedy, 377 U.S. at 168-69). The legislature passed Chapter 821 of the health and
safety code to provide justice courts with special and limited jurisdiction over actions
alleging cruel treatment of animals. Chambers, 261 S.W.3d at 759. Thus, the statute
promotes the nonpunitive purpose of protecting animals; however, another goal of the
statute is to order the animal owner to pay the restitution needed to reimburse the local
governmental entity for the cost to seize and care for the mistreated animals. See Tex.
Health & Safety Code Ann. § 821.023(e) (Vernon Supp. 2009). This latter, alternative,
purpose is rationally connected to the aim of the statute and is not intended to punish the
animal owner for his conduct. Therefore, we conclude that this factor is, on balance,
indicative of a nonpunitive effect. (15) 

7. Whether The Sanction Appears Excessive In Relation To The Alternative Purpose
Assigned


 In the context of a double-jeopardy claim, the Supreme Court made it clear that
courts should not elevate this factor to dispositive status. Hudson, 522 U.S. at 101. 
Nevertheless, of all the Hudson factors, "this factor cuts most directly to the question of
which statutes cross the boundaries of civil sanctions, and which do not." Rodriguez, 93
S.W.3d at 75. Accordingly, we afford this factor "considerable weight" in deciding whether
the statute is "punitive-in-fact." Id. Here, two horses were seized, and the justice court
ordered Almendarez to pay $211.00 in restitution to cover this cost. Nothing in the record
shows that this amount is excessive or arbitrary. As noted above, proceedings brought
under Subchapter B of Chapter 821 and the remedies authorized therein are designed to
protect animals from cruel treatment, and neither divesting a party from the ownership of
cruelly treated animals nor requiring the payment of money for their care are excessive to
this alternative purpose. (16)

 In sum, the intent of section 821.022-023 of the health and safety code was civil and
remedial in nature. Moreover, weighing all of the Hudson factors, there is no proof, much
less the "clearest proof" required by Hudson, (17) that the justice court's sanctions were so
punitive either in purpose or effect as to transform the civil action and remedies imposed
into a criminal punishment. (18) Accordingly, jeopardy did not attach at the justice court
hearing. Therefore, we hold that the subsequent criminal prosecution for cruelty to animals
does not violate the double-jeopardy prohibitions of the United States and Texas
Constitutions. (19) We further hold that the trial court abused its discretion in granting the
motion to quash on the grounds that the subsequent criminal prosecution violated the
double-jeopardy prohibitions. Issue one is sustained.

 In issue two, the State contends the doctrine of collateral estoppel does not bar
prosecution of Almendarez for cruelty to animals. "'Before collateral estoppel will apply to
bar re-litigation of a discrete fact, that fact must necessarily have been decided in favor of
the defendant in the first trial.'" Rollerson v. State, 227 S.W.3d 718, 730-31 (Tex. Crim.
App. 2007) (quoting Ex parte Watkins, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002)). In
other words, the doctrine "prevents a party who lost a fact issue in the trial of one cause
of action from relitigating the same fact issue in another cause of action against the same
party." Ex parte Taylor, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002) (emphasis in
original). Here, the State did not lose on a fact issue in the justice court proceedings. In
fact, the State prevailed in the justice court proceedings, and this disposition is the basis
of Almendarez's complaint in the county court at law that he was being put in second
jeopardy. Accordingly, the State is not collaterally estopped from prosecuting Almendarez
for the offenses of cruelty to animals. Issue two is sustained. 

Conclusion


 We sustain the State's issues, reverse the order quashing the information, and
remand the case to the trial court for further proceedings consistent with this opinion.

 

 ROSE VELA 

 Justice


Publish. Tex. R. App. P. 47.2(b).


Delivered and filed the 

10th day of December, 2009.
1. Article 44.01(a)(1), Texas Code of Criminal Procedure, allows the State to appeal from an order that
"dismisses an indictment, information, or complaint or any portion of an indictment, information, or
complaint[.]" Tex. Code Crim. Proc. Ann. art. 44.01(a)(1) (Vernon 2006).
2. Eduardo Almendarez did not file an appellate brief in this case.
3. Section 821.022(a) of the Texas Health & Safety Code provides:


 If a peace officer or an officer who has responsibility for animal control in a county
or municipality has reason to believe that an animal has been or is being cruelly treated, the
officer may apply to a justice court or magistrate in the county or to a municipal court in the
municipality in which the animal is located for a warrant to seize the animal.


Tex. Health & Safety Code Ann. § 821.022(a) (Vernon Supp. 2009). 
4. Section 821.022(b) of the Texas Health & Safety Code provides:


 On a showing of probable cause to believe that the animal has been or is being
cruelly treated, the court or magistrate shall issue the warrant and set a time within 10
calendar days of the date of issuance for a hearing in the appropriate justice court or
municipal court to determine whether the animal has been cruelly treated.


Id. § 821.022(b).
5. The justice court signed an order entitled "ORDER TO SELL OR DISPOSE OF CRUELLY TREATED
ANIMAL" which only referred to the brown filly. It made no mention of the black quarter horse mare.
6. Section 821.023 of the Texas Health & Safety Code provides, in relevant part:


 (d) If the court finds that the animal's owner has cruelly treated the animal, the owner
shall be divested of ownership of the animal, and the court shall:


 (1) order a public sale of the animal by auction;


 (2) order the animal given to a nonprofit animal shelter, pound, or society for the
protection of animals; or


 (3) order the animal humanely destroyed if the court decides that the best interest
of the animal or that the public health and safety would be served by doing so.


Id. § 821.023(d)(1)-(3).
7. Section 821.023(e) of the Texas Health & Safety Code provides, in relevant part: "A court that finds
that an animal owner has cruelly treated the animal shall order the owner to pay all court costs, including costs
of: (1) investigation; (2) expert witnesses; (3) housing and caring for the animal during its impoundment; . .
. ." Id. § 821.023(e)(1)-(3).
8. The Texas Constitution has been construed to give no greater protection than the United States
Constitution with respect to double jeopardy. Johnson v. State, 920 S.W.2d 692, 693 (Tex. App.-Houston
[1st Dist.] 1996, pet. ref'd) (citing Stephens v. State, 806 S.W.2d 812, 815 (Tex. Crim. App. 1990)). Thus, a
bifurcated analysis is not necessary. Capps v. State, 265 S.W.3d 44, 49 n.9 (Tex. App.-Houston [1st Dist.]
2008, pet. ref'd).
9. See also Bradley v. State, No. 01-08-00332-CR, 2009 WL 1688200, at *3 (Tex. App.-Houston [1st
Dist.] June 18, 2009, no pet. h.) (mem. op., not designated for publication) (in determining whether animal-cruelty prosecution was jeopardy barred because of a previous hearing under section 821.023 of the Texas
Health & Safety Code at which the animals that were the subject of the criminal prosecution were seized and
restitution was ordered, appellate court determined that "[t]he provisions in subchapter B of Chapter 821 of
the Texas Health and Safety Code, and specifically sections 821.022-023, are civil in nature."). 
10. See id. at *4 (after applying first Hudson factor, court concluded that "the seizure of appellant's dogs
and the order requiring that he pay for their care while boarded at the Houston Humane Society did not
'involve an affirmative disability or restraint' upon appellant."). 
11. See id. (after applying second Hudson factor, court stated, "[T]he civil provisions of subchapter B
of Chapter 821 [Texas Health & Safety Code], which were enacted for the protection of animals, have not
been historically regarded a 'punishment' against the owners of animals.").
12. See id. (after applying third Hudson factor, court stated that "no finding of scienter is required under
Chapter 821 [Texas Health & Safety Code]") (citing Capps v. State, 265 S.W.3d 44, 51 (Tex. App.-Houston
[1st Dist.] 2008, pet. ref'd) (noting that "there is no general requirement of scienter in the disciplinary rules").
13. See id. (after applying fourth Hudson factor, court stated, "[A]lthough proceedings brought under
chapter 821 to seize cruelly treated animals 'may offer some amount of deterrence--a traditional goal of
criminal punishment--the mere presence of the purpose is insufficient to render' these proceedings and the
resulting order divesting ownership and requiring payment for animal care to be criminal punishment.") (citing
Capps, 265 S.W.3d at 52).
14. See id. (after applying fifth Hudson factor, court stated, "[A]lthough the cruel treatment of animals
may give rise to criminal proceedings, 'this fact is insufficient to render' the remedies afforded under section
821.023 as 'criminally punitive.'").
15. See id. (stating that "proceedings brought under subchapter B of Chapter 821 and the remedies
authorized therein are designed to protect animals from cruel treatment. . . .").
16. See id. (after analyzing seventh Hudson factor, court stated that "neither divesting a party from the
ownership of cruelly treated animals nor requiring the payment of money for their care are excessive" for the
purpose of "protecting] animals from cruel treatment, . . . .").
17. See Hudson v. United States, 522 U.S. 93, 100 (1997).
18. See Bradley, 2009 WL 1688200, at *4 (after analyzing Hudson factors, court "conclude[d] that 'there
is little evidence much less the clearest proof,' that the justice court's order of disposition terminating
appellant's ownership of the dogs and requiring that he pay for their care was so punitive either in purpose
or effect as to transform the civil action and remedies imposed into a criminal punishment."). 
19. See id. (court held "that the State's subsequent criminal prosecution for the criminal offense of
cruelty to animals does not violate the double jeopardy prohibitions of the United States and Texas
Constitutions.").