

**NUMBER 13-09-282-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**THE STATE OF TEXAS,**                                             **Appellant,**

**v.**

**EDUARDO ALMENDAREZ,**                                        **Appellee.**

---

**On appeal from the County Court at Law No. 4
of Nueces County, Texas.**

---

**OPINION**

**Before Justices Yañez, Benavides, and Vela
Opinion by Justice Vela**

Appellee, Eduardo Almendarez, was charged by information with two counts of animal cruelty for the neglect of two horses. *See* TEX. PENAL CODE ANN. § 42.09(a)(2) (Vernon Supp. 2009). Almendarez filed a pre-trial motion to quash the information,

contending that double jeopardy barred his prosecution. He urged that a justice court had, in a prior hearing, terminated his ownership of the horses and ordered him to pay $211.00 in restitution to Nueces County Animal Control for the expense incurred in seizing both horses. The trial court granted the motion to quash, and the State appealed[1] to this Court. In two issues, the State contends the doctrines of double jeopardy and collateral estoppel do not bar prosecution of Almendarez for cruelty to animals.[2] We reverse and remand.

## I. PROCEDURAL BACKGROUND

On May 27, 2008, Ramon Herrera, III, Animal Control Manager for Nueces County Animal Control, presented an application to Nueces County Justice of the Peace Court, Precinct 1, Place 1, for a warrant[3] to seize two horses, a black quarter horse mare and a brown filly, owned by Eduardo Almendarez, because they were "being cruelly treated and that said [horses have] not been reasonably provided necessary food, care, or shelter. . . ." The justice court granted the application that same date and set a hearing on the matter for June 2, 2008.[4] After the hearing, the justice court determined[5] that the brown

---

[1]Article 44.01(a)(1), Texas Code of Criminal Procedure, allows the State to appeal from an order that "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint[.]" TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(1) (Vernon 2006).

[2]Eduardo Almendarez did not file an appellate brief in this case.

[3]Section 821.022(a) of the Texas Health & Safety Code provides:

   If a peace officer or an officer who has responsibility for animal control in a county or municipality has reason to believe that an animal has been or is being cruelly treated, the officer may apply to a justice court or magistrate in the county or to a municipal court in the municipality in which the animal is located for a warrant to seize the animal.

TEX. HEALTH & SAFETY CODE ANN. § 821.022(a) (Vernon Supp. 2009).

[4]Section 821.022(b) of the Texas Health & Safety Code provides:

   On a showing of probable cause to believe that the animal has been or is being cruelly treated, the court or magistrate shall issue the warrant and set a time within 10 calendar days of the date of issuance for a hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated.

filly had been cruelly treated and divested[6] Almendarez of all ownership interest in and right to the brown filly. The court ordered Almendarez to pay $211.00 in restitution[7] to Nueces County Animal Control to cover the expenses of the seizure and care of the horses.

On October 30, 2008, the Nueces County District Attorney's Office filed an information alleging in Count 1 that Almendarez "did then and there intentionally and knowingly fail unreasonably to provide necessary FOOD for a HORSE in the defendant's custody, by NOT PROVIDING FOOD OR WATER." (emphasis in original). In Count 2, the information alleged that he "did then and there intentionally and knowingly fail unreasonably to provide necessary FOOD for a FOAL in the defendant's custody, by NOT PROVIDING FOOD OR WATER." (emphasis in original). Defense counsel filed a motion to quash the information, contending that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred prosecution of this case. After a hearing, the trial court granted the motion to quash.

_Id_. § 821.022(b).

[5]The justice court signed an order entitled "ORDER TO SELL OR DISPOSE OF CRUELLY TREATED ANIMAL" which only referred to the brown filly. It made no mention of the black quarter horse mare.

[6]Section 821.023 of the Texas Health & Safety Code provides, in relevant part:

> (d) If the court finds that the animal's owner has cruelly treated the animal, the owner shall be divested of ownership of the animal, and the court shall:
>
> (1) order a public sale of the animal by auction;
>
> (2) order the animal given to a nonprofit animal shelter, pound, or society for the protection of animals; or
>
> (3) order the animal humanely destroyed if the court decides that the best interest of the animal or that the public health and safety would be served by doing so.

_Id_. § 821.023(d)(1)-(3).

[7]Section 821.023(e) of the Texas Health & Safety Code provides, in relevant part: "A court that finds that an animal owner has cruelly treated the animal shall order the owner to pay all court costs, including costs of: (1) investigation; (2) expert witnesses; (3) housing and caring for the animal during its impoundment; . . . ." _Id_. § 821.023(e)(1)-(3).

## II. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to quash an information, we apply an abuse-of-discretion standard. *Thomas v. State*, 44 S.W.3d 171, 174 (Tex. App.–Houston [14th Dist.] 2001, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, or acts arbitrarily or unreasonably. *Id.* (citing *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993)).

## III. DISCUSSION

In issue one, the State contends double jeopardy does not bar the criminal prosecution because the penalty ordered by the justice court did not constitute "criminal punishment" for double-jeopardy purposes. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides, in relevant part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend V, cl. 2. The Double Jeopardy Clause of the Texas Constitution provides, "[N]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."[8] TEX. CONST. art. 1, § 14. "The Fifth Amendment double jeopardy clause protects against multiple prosecutions for the 'same offense' following acquittal or conviction. It also protects against multiple punishments for the 'same offense.'" *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007). "[T]he Double Jeopardy Clause 'prohibits merely punishing twice, or *attempting a second time to punish criminally*, for the same offense.'" *Witte v. United States*, 515 U.S. 389, 396 (1995)

---

[8]The Texas Constitution has been construed to give no greater protection than the United States Constitution with respect to double jeopardy. *Johnson v. State*, 920 S.W.2d 692, 693 (Tex. App.–Houston [1st Dist.] 1996, pet. ref'd) (citing *Stephens v. State*, 806 S.W.2d 812, 815 (Tex. Crim. App. 1990)). Thus, a bifurcated analysis is not necessary. *Capps v. State*, 265 S.W.3d 44, 49 n.9 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd).

4

(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)) (emphasis in original).

*A. Whether Jeopardy Attached At The Justice Court Hearing*

We must first determine whether jeopardy previously attached at the justice court hearing before examining whether Almendarez's current prosecution for animal cruelty is barred by a second jeopardy. *Ex parte Ward*, 964 S.W.2d 617, 625 (Tex. Crim. App. 1998); *Ex parte George*, 913 S.W.2d 523, 525 (Tex. Crim. App. 1995); *see State v. Moreno,* No. PD-0821-08, 2009 WL 3013577, at *2 (Tex. Crim. App. Sept. 23, 2009) (stating that "jeopardy must have attached initially[]" before double-jeopardy protections are implicated.); *see also Illinois v. Somerville*, 410 U.S. 458, 467 (1973) (stating that "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial."). Attachment of jeopardy is necessary because in order for the principles of double jeopardy to be invoked, there must be a former jeopardy. *Ex parte Ward*, 964 S.W.2d at 625. In other words, "an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975) (quoted in *Ex parte McAfee*, 761 S.W.2d 771, 772 (Tex. Crim. App. 1988)). In *Ex parte George*, the court of criminal appeals addressed the doctrine of attachment of jeopardy:

> [T]he modern development of constitutional jurisprudence makes the resolution of jeopardy questions depend, in most contexts, upon a doctrine known as the attachment of jeopardy. Thus, before it can be said that an accused *has been put in jeopardy a second time*, in violation of the Texas or United States Constitution, it must appear that he was actually *put in jeopardy before*.

*Ex parte George*, 913 S.W.2d at 525 (emphasis added). "Thus, determining when jeopardy *attaches* is the initial source for examining whether a proceeding is barred as a second jeopardy." *Ex parte Ward*, 964 S.W.2d at 625 (emphasis in original).

5

Double jeopardy does not bar remedial civil proceedings based on the same offense as a prior criminal prosecution, or vice versa. *State v. Solar*, 906 S.W.2d 142, 146 (Tex. App.–Fort Worth 1995, pet. ref'd); *see also One Lot Emerald Cut Stone v. United States*, 409 U.S. 232, 235-36 (1972) (per curiam) (stating that Congress may impose both a civil and a criminal sanction for the same act or omission; double jeopardy clause merely prohibits attempting to punish criminally for same offense); *Malone v. State*, 864 S.W.2d 156, 159 (Tex. App.–Fort Worth 1993, no pet.) (stating that trial for termination of parental rights is a civil proceeding with a remedial result—protecting abused and neglected children—and does not trigger jeopardy bar to subsequent criminal prosecution for aggravated sexual assault of child). "[I]n determining whether a *criminal prosecution* is barred due to the prohibition against multiple punishments, attachment of jeopardy occurs in a *civil proceeding* when punishment is actually imposed." *Ex parte Ward*, 964 S.W.2d at 624 n.8 (emphasis in original). If a civil sanction or remedy imposed on a person does not constitute punishment, a subsequent criminal prosecution of that individual arising out of the same situation, circumstances, or conduct neither implicates nor violates the protections against double jeopardy. *See, e.g., Ex parte Tharp*, 935 S.W.2d 157, 159-61 (Tex. Crim. App. 1996) (holding that an administrative license suspension did not constitute punishment and therefore did not implicate the protections against double jeopardy in regard to a subsequent DWI prosecution); *Fant v. State*, 931 S.W.2d 299, 308-09 (Tex. Crim. App. 1996) (holding that Texas' civil asset-forfeiture scheme did not constitute punishment and therefore did not implicate the protections against double jeopardy in regard to a subsequent prosecution for the offense underlying the asset forfeiture); *Capps v. State*, 265 S.W.3d 44, 49 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd) (concluding that disciplinary actions brought against attorney did not constitute criminal punishment to

6

bar subsequent criminal proceedings); *Ex parte Sheridan*, 974 S.W.2d 129, 131-34 (Tex. App.–San Antonio 1998, pet. ref'd) (holding that the cancellation of the defendant's alcoholic beverage license because he lied on the application did not constitute punishment and therefore did not bar his subsequent prosecution for making false statements on the application). Here, if the termination of Almendarez's rights to the brown filly and the order of restitution did not constitute punishment, his subsequent criminal prosecution arising out of the same conduct neither implicated nor violated the protections against double jeopardy. *See id.*; *see also Ex parte Ward*, 964 S.W.2d at 630 (explaining that "had jeopardy attached in the civil tax proceeding [for possession of drugs] . . . any proceeding initiated by the State to prosecute the . . . defendants on the possession of drugs would have been considered the functional equivalent of a successive prosecution placing them at *risk* for a second punishment for the same conduct.") (emphasis in original).

"Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (holding civil suit resulting in monetary civil penalties for violation of federal banking statutes did not bar later criminal prosecution). "A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id.* (internal quotes omitted).

The provisions in Subchapter B of Chapter 821 of the Texas Health and Safety Code, and specifically sections 821.022-023, are civil in nature. *See Chambers v. State*, 261 S.W.3d 755, 759 (Tex. App.–Dallas 2008, pet. denied) (noting "that the State filed the animal cruelty case pursuant to chapter 821 of the health and safety code dealing with the health and safety of animals, not as a crime under the penal code."); *Granger v. Folk*, 931

7

S.W.2d 390, 392 (Tex. App.–Beaumont 1996, pet. denied) (stating that "[c]learly, two avenues exist for the State in protecting animals from cruel treatment, i.e., criminal prosecution under . . . the [Texas] Penal Code and the civil remedy provided under Section 821.023 of the Health and Safety Code").[9] In fact, section 821.023 expressly contemplates the possibility of criminal proceedings brought subsequent to civil proceedings. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.023(b) (Vernon Supp. 2009) ("A statement of an owner made at a hearing provided for under this subchapter is not admissible in a trial of the owner for an offense under section 42.09 or 42.092, Penal Code."); *see also Granger*, 931 S.W.2d at 392 (stating that section 821.023(a) "presumes a criminal proceeding prior to the civil proceeding while [section 821.023(b)] presumes the reverse[]" and that "in the criminal proceeding, a defendant may face loss of freedom or fine or both, whereas, a proceeding under section 821.023 may subject the defendant to a loss, forfeiture and confiscation of property rights and interests.") (footnote omitted).

Having determined that the intent of section 821.022-023 of the health and safety code was civil and remedial, and not criminal or punitive, we must now examine "'whether the statutory scheme [is] so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.'" *Rodriguez v. State*, 93 S.W.3d 60, 67 (Tex. Crim. App. 2002) (quoting *Hudson*, 522 U.S. at 99) (citations and internal quotation marks omitted). To evaluate whether the effects of the statute are criminally punitive, courts generally look to the factors set forth by the Supreme Court in *Kennedy v.*

---

[9]*See also Bradley v. State*, No. 01-08-00332-CR, 2009 WL 1688200, at *3 (Tex. App.–Houston [1st Dist.] June 18, 2009, no pet. h.) (mem. op., not designated for publication) (in determining whether animal-cruelty prosecution was jeopardy barred because of a previous hearing under section 821.023 of the Texas Health & Safety Code at which the animals that were the subject of the criminal prosecution were seized and restitution was ordered, appellate court determined that "[t]he provisions in subchapter B of Chapter 821 of the Texas Health and Safety Code, and specifically sections 821.022-023, are civil in nature.").

*Mendoza-Martinez*, 372 U.S. 144, 169 (1963), and restated by the Court in *Hudson* (the "*Hudson* factors"). Courts consider: (1) "'[w]hether the sanction involves an affirmative disability or restraint;'" (2) "'whether it has historically been regarded as a punishment;'" (3) "'whether it comes into play only on a finding of *scienter*;'" (4) "'whether its operation will promote the traditional aims of punishment-retribution and deterrence;'" (5) "'whether the behavior to which it applies is already a crime;'" (6) "'whether an alternative purpose to which it may rationally be connected is assignable for it;'" and (7) "'whether it appears excessive in relation to the alternative purpose assigned.'" *Hudson*, 522 U.S. at 99-100 (quoting *Kennedy,* 372 U.S. at 168-69). "'[T]hese factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (quoting *United States v. Ward*, 448 U.S. 242, 249 (1980)) (internal quotation marks omitted). "In reviewing the double jeopardy claim raised in *Hudson*, the Court explained that the factors are 'useful guideposts' but that none are dispositive." *Rodriguez*, 93 S.W.3d at 68 (quoting *Hudson*, 522 U.S. at 99).

B. Application Of The Hudson Factors

1. Whether The Sanction Involved An Affirmative Disability Or Restraint

In *Hudson*, the Supreme Court held that occupational disbarment and the imposition of monetary fines "do not involve an 'affirmative disability or restraint,' as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is certainly nothing approaching the infamous punishment of imprisonment." 522 U.S. at 104 (citing *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)) (internal quotation marks partially omitted). Here, the sanctions (termination of ownership rights in the brown filly and payment of $211.00 in restitution) did not involve an affirmative

disability or restraint against Almendarez. *See id.*[10]

*2. Whether The Sanction Has Historically Been Regarded As A Punishment*

Monetary restitution has not historically been viewed as punishment in the double-jeopardy context. *See Capps*, 265 S.W.3d at 51 (stating that "neither monetary restitution nor disbarment has historically been viewed as 'punishment'. . . .") (citing *Hudson*, 522 U.S. at 104); *Ex parte Lozano*, 982 S.W.2d 511, 513 (Tex. App.–San Antonio 1998, no pet.) (stating that "[a] civil penalty is considered remedial if its purpose is merely to reimburse the government for damages sustained as a result of the defendant's criminal conduct."). With respect to the termination of Almendarez's ownership rights in the brown filly, both the United States Supreme Court and this Court have stated that civil forfeitures do not constitute punishment for double-jeopardy purposes. *See United States v. Ursery*, 518 U.S. 267 (1996) (concluding that federal civil forfeitures do not constitute punishment for double-jeopardy purposes because they are civil in rem proceedings which are neither punitive nor criminal in nature); *Ex parte Torres*, 941 S.W.2d 219, 221 (Tex. App.–Corpus Christi 1996, no pet.) (explaining that "in enacting the forfeiture statutes, the [Texas] Legislature intended forfeitures to be civil proceedings, remedial in nature, and not a form of punishment.").[11] We note the sanctions imposed here are no more serious than "those quasi-administrative adjuncts of a criminal sentence that have not traditionally been considered criminal sanctions: for example, the loss of voting privileges, license suspensions or revocations as well as the . . . dissemination of rap sheet information."

---

[10]*See id.* at \*4 (after applying first *Hudson* factor, court concluded that "the seizure of appellant's dogs and the order requiring that he pay for their care while boarded at the Houston Humane Society did not 'involve an affirmative disability or restraint' upon appellant.").

[11]*See id*. (after applying second *Hudson* factor, court stated, "[T]he civil provisions of subchapter B of Chapter 821 [Texas Health & Safety Code], which were enacted for the protection of animals, have not been historically regarded a 'punishment' against the owners of animals.").

*Rodriguez*, 93 S.W.3d at 72.

*3. Whether The Sanction Comes Into Play Only On A Finding Of Scienter*

There is no general requirement of scienter (culpable mental state) under Chapter 821 of the health and safety code, and a finding of scienter is not required in order for a court to divest an owner of his or her rights in animals or to order restitution. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.022-023 (Vernon Supp. 2009). While the justice court may have considered Almendarez's culpable mental state in rendering its order of termination and restitution, nothing in section 821.023 provides for termination or restitution that involves an element of scienter. *See id.*;[12] *Cf. Hudson*, 522 U.S. at 104 (no finding of scienter required when provisions allowed for assessment of a penalty against any person "who violates" any of the underlying banking statutes).

*4. Whether The Sanction's Operation Will Promote The Traditional Aims Of Punishment-Retribution And Deterrence*

When a statute promotes the traditional aims of punishment—retribution and deterrence—its effect is more likely to be considered punitive. *Rodriguez*, 93 S.W.3d at 73 (citing *Hudson*, 522 U.S. at 104). "The existence of a deterrent effect alone, however, will generally be insufficient to transform a civil sanction into a criminal one." *Id*. (citing *Hudson*, 522 U.S. at 105). Courts must always assess this factor with an eye to the statute's stated aims. *Id*. When the legislature has not manifested an intent to promote the traditional aims of punishment, it behooves us to refrain from searching for one in the statute's indirect effects. *Id*. The conduct that led to the sanctions against Almendarez formed the basis for the subsequent criminal prosecution against him. However, this fact

---

[12]*See id*. (after applying third *Hudson* factor, court stated that "no finding of scienter is required under Chapter 821 [Texas Health & Safety Code]") (citing *Capps v. State*, 265 S.W.3d 44, 51 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd) (noting that "there is no general requirement of scienter in the disciplinary rules").

11

is insufficient to render the sanctions "criminally punitive." *See Hudson*, 522 U.S. at 105 (explaining that the conduct for which sanctions are imposed, even if the conduct formed the basis for an indictment, is insufficient to render the sanctions "criminally punitive, particularly in the double jeopardy context[.]") (citation omitted). The *Hudson* Court recognized that while the imposition of "sanctions will deter others from emulating petitioners' conduct, a traditional goal of criminal punishment[,] . . . the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" *Id*. (quoting *Ursery*, 518 U.S. at 292). The retributive and deterrent effects of section 821.022-023 of the health and safety code are incidental, and not primary, to the statute's operation and, therefore, militate towards nonpunitive intent.[13] *See Rodriguez*, 93 S.W.3d at 74 (stating that when a statute's "retributive and deterrent effects . . . are incidental, and not primary, to the statute's operation[,] . . . we . . . weigh this factor in favor of nonpunitive intent.").

*5. Whether The Behavior To Which The Sanction Applies Is Already A Crime*

"A statute that applies to behavior that is already a crime is more likely to be characterized as a criminal sanction." *Id*. However, the Supreme Court has noted that this factor alone is insufficient to render sanctions criminally punitive. *Hudson*, 522 U.S. at 105. Even though the cruel treatment of animals may lead to prosecution under the Texas Penal Code, "this fact is insufficient to render" the remedies afforded under section 821.023 as criminally punitive. *See Ex parte Sheridan*, 974 S.W.2d at 134 ("It is well settled that the legislature 'may impose both a criminal and a civil sanction in respect to the same act or

---

[13]*See id*. (after applying fourth *Hudson* factor, court stated, "[A]lthough proceedings brought under chapter 821 to seize cruelly treated animals 'may offer some amount of deterrence—a traditional goal of criminal punishment—the mere presence of the purpose is insufficient to render' these proceedings and the resulting order divesting ownership and requiring payment for animal care to be criminal punishment.") (citing *Capps*, 265 S.W.3d at 52).

omission.'") (quoting *Helvering*, 303 U.S. at 399).[14]

*6. Whether An Alternative Purpose To Which The Sanction May Rationally Be Connected Is Assignable For It*

"Under this factor, we inquire whether there is an alternative, nonpunitive purpose that may rationally be connected to the statute." *Rodriguez*, 93 S.W.3d at 74 (citing *Kennedy*, 377 U.S. at 168-69). The legislature passed Chapter 821 of the health and safety code to provide justice courts with special and limited jurisdiction over actions alleging cruel treatment of animals. *Chambers*, 261 S.W.3d at 759. Thus, the statute promotes the nonpunitive purpose of protecting animals; however, another goal of the statute is to order the animal owner to pay the restitution needed to reimburse the local governmental entity for the cost to seize and care for the mistreated animals. *See* Tex. Health & Safety Code Ann. § 821.023(e) (Vernon Supp. 2009). This latter, alternative, purpose is rationally connected to the aim of the statute and is not intended to punish the animal owner for his conduct. Therefore, we conclude that this factor is, on balance, indicative of a nonpunitive effect.[15]

*7. Whether The Sanction Appears Excessive In Relation To The Alternative Purpose Assigned*

In the context of a double-jeopardy claim, the Supreme Court made it clear that courts should not elevate this factor to dispositive status. *Hudson*, 522 U.S. at 101. Nevertheless, of all the *Hudson* factors, "this factor cuts most directly to the question of which statutes cross the boundaries of civil sanctions, and which do not." *Rodriguez*, 93

---

[14]*See id*. (after applying fifth *Hudson* factor, court stated, "[A]lthough the cruel treatment of animals may give rise to criminal proceedings, 'this fact is insufficient to render' the remedies afforded under section 821.023 as 'criminally punitive.'").

[15]*See id*. (stating that "proceedings brought under subchapter B of Chapter 821 and the remedies authorized therein are designed to protect animals from cruel treatment. . . .").

13

S.W.3d at 75. Accordingly, we afford this factor "considerable weight" in deciding whether the statute is "punitive-in-fact." *Id.* Here, two horses were seized, and the justice court ordered Almendarez to pay $211.00 in restitution to cover this cost. Nothing in the record shows that this amount is excessive or arbitrary. As noted above, proceedings brought under Subchapter B of Chapter 821 and the remedies authorized therein are designed to protect animals from cruel treatment, and neither divesting a party from the ownership of cruelly treated animals nor requiring the payment of money for their care are excessive to this alternative purpose.[16]

In sum, the intent of section 821.022-023 of the health and safety code was civil and remedial in nature. Moreover, weighing all of the *Hudson* factors, there is no proof, much less the "clearest proof" required by *Hudson*,[17] that the justice court's sanctions were so punitive either in purpose or effect as to transform the civil action and remedies imposed into a criminal punishment.[18] Accordingly, jeopardy did not attach at the justice court hearing. Therefore, we hold that the subsequent criminal prosecution for cruelty to animals does not violate the double-jeopardy prohibitions of the United States and Texas Constitutions.[19] We further hold that the trial court abused its discretion in granting the motion to quash on the grounds that the subsequent criminal prosecution violated the

---

[16]*See id.* (after analyzing seventh *Hudson* factor, court stated that "neither divesting a party from the ownership of cruelly treated animals nor requiring the payment of money for their care are excessive" for the purpose of "protecting] animals from cruel treatment, . . . .").

[17]*See Hudson v. United States*, 522 U.S. 93, 100 (1997).

[18]*See Bradley*, 2009 WL 1688200, at *4 (after analyzing *Hudson* factors, court "conclude[d] that 'there is little evidence much less the clearest proof,' that the justice court's order of disposition terminating appellant's ownership of the dogs and requiring that he pay for their care was so punitive either in purpose or effect as to transform the civil action and remedies imposed into a criminal punishment.").

[19]*See id.* (court held "that the State's subsequent criminal prosecution for the criminal offense of cruelty to animals does not violate the double jeopardy prohibitions of the United States and Texas Constitutions.").

14

double-jeopardy prohibitions.  Issue one is sustained.

In issue two, the State contends the doctrine of collateral estoppel does not bar prosecution of Almendarez for cruelty to animals.  "'Before collateral estoppel will apply to bar re-litigation of a discrete fact, that fact must necessarily have been decided in favor of the defendant in the first trial.'" *Rollerson v. State*, 227 S.W.3d 718, 730-31 (Tex. Crim. App. 2007) (quoting *Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002)).  In other words, the doctrine "prevents a party who lost a fact issue in the trial of one cause of action from relitigating the same fact issue in *another* cause of action against the same party."  *Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002) (emphasis in original).  Here, the State did not lose on a fact issue in the justice court proceedings.  In fact, the State prevailed in the justice court proceedings, and this disposition is the basis of Almendarez's complaint in the county court at law that he was being put in second jeopardy.  Accordingly, the State is not collaterally estopped from prosecuting Almendarez for the offenses of cruelty to animals.  Issue two is sustained.

### Conclusion

We sustain the State's issues, reverse the order quashing the information, and remand the case to the trial court for further proceedings consistent with this opinion.

ROSE VELA
Justice

Publish.  TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of December, 2009.

15