

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-13-00349-CR
No. 07-13-00404-CR
No. 07-13-00405-CR
No. 07-13-00406-CR
No. 07-13-00407-CR
No. 07-13-00408-CR
No. 07-13-00409-CR
No. 07-13-00410-CR
No. 07-13-00411-CR

_____

MICHELLE LORRAINE LEHMAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from County Court at Law No. 2
Ellis County, Texas
Trial Court No. 120762CR; Honorable A. Gene Calvert, Jr., Presiding

September 8, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Michelle Lorraine Lehman, was charged by indictment with nine counts of cruelty to nonlivestock animals, a Class A misdemeanor.[1] She was convicted by a jury and sentenced to the maximum sentence of 365 days confinement and a fine of $4,000, as to each count. Nine separate judgments were entered against her. Each judgment provided the separate sentences would be served concurrently,[2] and the judgment entered as to Count 1 provided that costs of court would include $600 for court-appointed attorney's fees.

Appellant presents two issues challenging her convictions. First, she maintains the trial court erred in determining that a special plea of double jeopardy did not apply. Secondly, she questions whether trial counsel's performance constituted ineffective assistance. She maintains alleged errors of omission denied her a fair trial and violated her due process rights. We affirm.

**BACKGROUND**

At trial, Appellant claimed she ran an independent animal rescue facility. She maintained she operated this facility on rented property consisting mostly of a barn and adjacent pastureland. In late July 2011, Appellant's landlord's son made a 911 call to report that he was driving by the property when he observed Appellant strike a dog with what looked like a pole. Officers were dispatched to the property where they discovered numerous cats and dogs in unclean conditions with dirty or no water and sparse food,

---

[1] TEX. PENAL CODE ANN. § 42.092(b)(3) (West 2011). A Class A misdemeanor is punishable by confinement in jail for a term not to exceed one year, a fine not to exceed $4,000, or by both such confinement and fine. *Id.* at § 12.21(1).

[2] Concurrent sentence provisions apply to the entire sentence, not just the term of incarceration. TEX. PENAL CODE ANN. § 3.03(a) (West Supp. 2014); *State v. Cook*, 248 S.W.3d 172, 177 (Tex. Crim. App. 2008).

including pizza scraps. An animal control officer was called to the scene to evaluate the condition, and he determined that a pit bull and a white cat needed immediate care. According to the subsequent trial testimony of the animal control officer, forty-eight dogs and thirty-four cats were impounded.[3]

On August 9, 2011, a civil proceeding was conducted in the Ellis County Justice Court, Precinct 2, pursuant to sections 821.022 and 821.023 of the Texas Health and Safety Code, pertaining to the disposition of cruelly treated animals. Following that hearing, the justice court entered an order authorizing the forfeiture and humane destruction of thirty-eight unspecified animals. The order also required Appellant to pay the sum of $4,543.70, as costs of court under section 821.023(e). That section provides that when a court finds that an impounded animal's owner has cruelly treated the animal, the owner shall pay, as costs of court, the cost of housing and caring for the impounded animal and the cost of humanely destroying the animal, if destruction is ordered.[4] Here, the order did not provide a breakdown of those costs.

Eleven months later, on July 12, 2012, Appellant was criminally charged with nine counts of animal cruelty based on the same events leading up to the civil proceeding in justice court. As to each count, the information specified the type of animal allegedly mistreated.[5] Appellant filed a verified special plea pursuant to article

---

[3] At the pretrial hearing on the motion to suppress, the trial court makes a reference to forty-five dogs and thirty-five cats.

[4] The sum remained unpaid as of the date of the pretrial hearing.

[5] Count 1—female Schnauzer mix puppy; Count 2—male Shepherd mix dog; Count 3—Labrador mix dog; Count 4—white shorthair cat; Count 5—male Pit Bull-Boxer mix; Count 6—female Pit Bull-Boxer mix; Count 7—American Pit-Bull Terrier; Count 8—female Pit-Bull named "Ruby"; and Count 9—chocolate Labrador mix.

3

27.05 of the Texas Code of Criminal Procedure alleging a claim of double jeopardy. She asserted she was being tried for animal cruelty arising from the same incident that resulted in the assessment of court costs in the justice court proceeding. She argued the costs assessed against her in that proceeding were excessive and punitive in effect, giving rise to a claim of double jeopardy. The trial court denied the special plea, and the case proceeded to trial. Appellant was convicted of all nine counts of animal cruelty and this appeal followed.

### ISSUE ONE—DOUBLE JEOPARDY

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause, applicable to states through the Fourteenth Amendment, protects an accused against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense. *Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013) (citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

Under article 27.05 of the Texas Code of Criminal Procedure, a defendant may assert a claim of double jeopardy by asserting a special plea. Under this procedure, a trial court must submit the special plea to the trier of fact, unless it determines the special plea does not present a legally sufficient claim of double jeopardy. *See* TEX. CODE CRIM. PROC. ANN. art. 27.07 (West 2006). In other words, "if conceding the facts averred in the special plea to be true, the plea in bar would not be good in law, the trial

4

court may overrule it and decline to submit it to the jury." *Arredondo v. State*, 582 S.W.2d 457, 459 (Tex. Crim. App. 1979) (citing *Thompson v. State*, 99 Tex. Crim. 470, 269 S.W. 1048 (1925)). Unless a special plea does not present a legally sufficient double jeopardy claim, issues of fact presented by a special plea shall be tried by the trier of fact during the trial on the merits. *Apolinar v. State*, 820 S.W.2d 792, 793 (Tex. Crim. App. 1991). A special plea is a mechanism for avoiding reconviction, not retrial. *Id.* at 794.

In protecting animals from cruel treatment, the State has two non-exclusive options: (1) seizing the animals under chapter 821 of the Texas Health and Safety Code or (2) criminal prosecution under chapter 49 of the Texas Penal Code. The intent of chapter 821 is civil and remedial in nature. *State v. Almendarez*, 301 S.W.3d 886, 895 (Tex. App.—Corpus Christi 2009, no pet.) (citing *Granger v. Folk*, 931 S.W.2d 390, 392 (Tex. App.—Beaumont 1996, orig. proceeding)). Section 821.023(b) contemplates the separate and distinct nature of civil proceedings under the Texas Health and Safety Code and criminal proceedings under the Texas Penal Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.023(b) (West Supp. 2014) (providing, "[a] statement of an owner made at a hearing provided for under this subchapter is not admissible in a trial of the owner for an offense under Section 42.09 or 42.092, Penal Code").

Where the Legislature has indicated its intent to establish a civil penalty for certain conduct, courts must still inquire whether the statutory scheme is so punitive, either in purpose or effect, as to transform what was intended as a civil remedy into a criminal penalty for double jeopardy purposes. *See Capps v. State*, 265 S.W.3d 44, 49 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In other words, whether a particular

5

punishment is criminal or civil is a matter of statutory construction. *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). In determining whether a statutory scheme is punitive, courts should consider these factors whether: (1) the sanction involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of scienter; (4) its operation will promote the traditional aims of punishment—retribution and deterrence; (5) the behavior to which it applies is already a crime; (6) an alternative purpose to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. *Id.* at 99-100. These factors must be considered in relation to the statute on its face and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Id.* at 100. Distilled to its essence, the inquiry before us is whether the trial court correctly determined that the special plea did not present a legally sufficient double jeopardy claim for submission to the jury.

## ANALYSIS

By her first issue, Appellant contends the trial court erred in finding that a special plea of double jeopardy did not apply to her. Specifically, by her verified special plea, Appellant alleged she was placed in jeopardy for the exact same conduct underlying her criminal charges when the justice court order imposed a penalty that was so punitive it amounted to a conviction and assessment of sentence. She requested dismissal of the criminal charges or alternatively, an order authorizing submission of double jeopardy issue to the trier of fact. We disagree with Appellant's conclusions.

6

Here, consideration of Appellant's special plea of double jeopardy began during pretrial proceedings and was also addressed just prior to commencement of *voir dire,* at the trial on the merits, as well as during trial.[6] Appellant argued below that the court costs assessed against her of $4,543.70 were a "massive fine" which had a punitive effect because they exceeded the maximum fine allowable for a Class A misdemeanor.[7] The trial court inquired on the breakdown of the total costs in the civil proceeding and was advised that no record had been made of that proceeding. However, the prosecutor, who was also the prosecutor at the civil proceedings, explained that none of the $4,543.70 assessed against Appellant constituted a fine. The amount was the cost incurred in housing and caring for thirty-eight animals during their impoundment and eventual humane destruction.

In *Almendarez*, 301 S.W.3d at 888, the trial court granted the defendant's motion to quash the information for two counts of animal cruelty on the grounds of double jeopardy when the defendant had been previously ordered to pay $211 in restitution for the seizure and care of two horses at a civil hearing in justice court. The State appealed arguing that double jeopardy had not attached in the justice court proceeding because the restitution ordered by the justice court did not constitute "criminal punishment" for double jeopardy purposes. In applying the *Hudson* factors, the appellate court held the trial court abused its discretion in granting the defendant's motion to quash because the hearing held in justice court pursuant to section 821.022 of the Texas Health and Safety Code was civil and remedial in nature and there was no

---

[6] The trial court denied the special plea before commencement of *voir dire* but revisited the issue several times during trial out of an abundance of caution.

[7] Although Appellant was assessed nine fines of $4,000 each, because the sentences were ordered to run concurrently, Appellant's fine is effectively only $4,000.

clear proof, considering the *Hudson* factors, that the justice court's order was so punitive as to transform the civil action into a criminal punishment. *Almendarez,* 301 S.W.3d at 895.

Appellant distinguishes *Almendarez* by comparing the $211 ordered as restitution for the care of two horses to the $4,543.70 assessed against her which she labels as a "massive civil penalty." Contrary to Appellant's assertion, *Almendarez* is on point.

### THE *HUDSON* FACTORS

The $4,543.70 assessed against Appellant for the housing and caring of thirty-eight animals during impoundment and humane destruction of those animals did not involve an affirmative disability or restraint against her. Furthermore, monetary restitution has not historically been viewed as punishment for purposes of double jeopardy. *Capps*, 265 S.W.3d at 51. The intent of section 821.022 through .023 of the Texas Health and Safety Code is civil and remedial, not criminal nor punitive. While chapter 821 does require a finding that the impounded animal's owner has cruelly treated the animal in quesiton, nothing in that chapter requires a finding of scienter, i.e., that the owner knowingly or intentionally engaged in conduct that was cruel to that animal.

Retribution and deterrence are traditional aims of punishment and are more likely to be considered punitive. *Hudson,* 522 U.S. at 104. While imposing the cost of housing impounded animals and their humane disposal may have a retributive effect and serve as a form of deterrence, the existence of those effects alone are generally insufficient to transform a civil penalty into a criminal one. *Id.* at 105.

Even though cruel treatment of animals may subject one to criminal prosecution under the Texas Penal Code, again this fact alone is insufficient to render the remedies under section 821.023 as criminally punitive. *See Ex parte Sheridan*, 974 S.W.2d 129, 134 (Tex. App.—San Antonio 1998, pet. ref'd) (noting the Legislature may impose both a criminal and a civil sanction in respect to the same act or omission).

The goal of chapter 821 is to protect animals. Another goal is to order the animal owner to pay the restitution necessary to reimburse the local government entity for the costs of seizing and caring for mistreated animals. *Chambers v. State*, 261 S.W.3d 755, 759 (Tex. App.—Dallas 2008, pet. denied). This alternative purpose is rationally connected to the aim of the statute and is not intended to punish the animal owner for his or her conduct. Finally, we must determine whether the civil sanction appears excessive in relation to the alternative purpose assigned. *Almendarez*, 301 S.W.3d at 895. While this factor should not be elevated to dispositive status, *Hudson*, 522 U.S. at 101, "considerable weight" should be afforded this factor in determining whether section 821.022 through .023 is "punitive-in-fact." *Almendarez*, 301 S.W.3d at 895.

Appellant had thirty-eight animals seized from her property. In a civil proceeding, she was ordered to reimburse the local government entity "all court costs, including costs of investigation, expert witnesses, housing and caring for the animal(s) during impoundment, and humanely destroying the animal(s) if destruction is ordered, in the amount of $4,543.70." Divesting Appellant of the ownership of thirty-eight animals and requiring payment for their care and humane destruction is insufficient to render the justice court proceeding as criminal.

9

We conclude that the intent of section 821.022 through .023 is civil and remedial in nature. Having weighed the *Hudson* factors, we find no evidence, much less the "clearest proof" required by *Hudson*, that the justice court's order was so punitive as to transform the civil proceeding into a criminal punishment. Therefore, even if we were to concede the facts in Appellant's special plea as true, it would not present a legally sufficient double jeopardy claim that would require submission to the trier of fact. Appellant did not allege in her special plea, as she does on appeal, that the costs assessed against her were so excessive they had a punitive effect. There is nothing in the record to support Appellant's theory that a "fine" was assessed against her. Although the sum seems punitive to Appellant in light of the $211 that was ordered in *Almendarez* for the care of two horses, we direct Appellant to *Bradley v. State*, No. 01-08-00332-CR, 2009 Tex. App. LEXIS 4500, at *2 (Tex. App.—Houston [1st Dist.] June 18, 2009, pet. ref'd) (mem. op., not designated for publication), in which the justice court ordered the appellant to pay $9,020 to the Houston Humane Society for the boarding and care of forty-five pit bulls that had been seized.

The trial court correctly found Appellant's special plea of double jeopardy did not present a legally sufficient claim of double jeopardy to require submission of the issue to the trier of fact. We hold that jeopardy did not attach at the civil proceeding, and the subsequent criminal prosecution of Appellant for cruelty to animals was not barred by double jeopardy. Issue one is overruled.

**ISSUE TWO—INEFFECTIVE ASSISTANCE OF COUNSEL**

By her second issue, Appellant asserts she was denied effective assistance of counsel during the proceedings.[8]  Specifically, she maintains counsel's performance was ineffective in failing to (1) move for a recess when the trial court put the parties on notice of consideration of the special plea, (2) request a directed verdict, and (3) preserve error by objecting to evidence obtained during the search of her property.  We disagree.

A claim of ineffectiveness is reviewed under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under *Strickland*, a defendant must establish that (1) counsel's performance was deficient (i.e., fell below an objective standard of reasonableness) and (2) there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different, a reasonable probability being a probability sufficient to undermine confidence in the outcome.  For a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant.  *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).  There is a strong presumption that counsel's conduct fell within the wide range of reasonable and professional representation.  *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).  An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Direct appeal is usually

---

[8] Appellant was initially represented by retained counsel.  On March 4, 2013, the trial court appointed new counsel who represented Appellant during pretrial hearings.  A third attorney, also court-appointed, was substituted for trial on the merits.

an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). This statement is true with regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do something do not appear in the record. *Id.* Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Id.* If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

## ANALYSIS

Appellant's *Motion for New Trial* did not contain an allegation of ineffective assistance of counsel. No hearing was held on her motion, and more importantly, no evidence of ineffective assistance was presented. On appeal, she argues trial counsel was ineffective in three acts of omission, to-wit: (1) failing to request a recess, (2) failing to move for a directed verdict and (3) failing to object to evidence related to the search of her property that was the subject of a pretrial motion to suppress.

### FAILING TO REQUEST A RECESS

Appellant asserts counsel's performance was deficient for failing to request a recess to research the special plea of double jeopardy when the trial court put the parties on notice it was considering the special plea. She does not, however, provide any authority on a finding of ineffective assistance by counsel in failing to request a recess. The issue of the special plea was raised during pretrial hearings and prior to

*voir dire*. Initially, the trial court ruled the averments in the special plea did not present a legally sufficient double jeopardy claim to present to the trier of fact. Notwithstanding the court's ruling, during trial, outside the presence of the jury, the trial court put the parties on notice that the special plea may require evidence and offered the parties an opportunity to research the issue. At the close of the evidence, trial counsel made a bill of exception to preserve the special plea for appellate review. He offered a copy of the 2011 justice court order in support of the special plea. Based on the record before us, Appellant has not established that trial counsel's failure to move for a recess to research the special plea amounted to deficient performance that prejudiced her case.

### FAILING TO MOVE FOR DIRECTED VERDICT

Counsel is not deficient for failing to move for a directed verdict if the State presents more than a scintilla of evidence to support a guilty verdict. *Gill v. State*, 111 S.W.3d 211, 217 (Tex. App.—Texarkana 2003, no pet.). In all nine counts, Appellant was charged with failing unreasonably to provide necessary food, water, care or shelter for animals in her custody. *See* TEX. PENAL CODE ANN. § 49.092(b)(3) (West 2011). The testimony of the complainant and his wife, who testified they witnessed Appellant striking a dog as well as the testimony of the responding officers and the animal control officer concerning the lack of adequate food and water, presents more than a scintilla of evidence to support a guilty verdict. Additionally, Appellant has not demonstrated she would prevail on the second prong of *Strickland*—that the result of the trial would have been different.

13

## FAILING TO PRESERVE ERROR BY OBJECTING TO SEARCH OF PROPERTY

A pretrial hearing was held on Appellant's *Motion to Suppress* by which she alleged police officers entered her property illegally without a search warrant or consent to search. The motion was denied. Appellant asserts that counsel's failure to repeatedly object during trial to evidence related to the search of her property constituted ineffective assistance of counsel by failing to preserve error. We disagree. An adverse ruling on a pretrial motion to suppress evidence is ordinarily sufficient to preserve error on appeal and a defendant need not object to the evidence when it is later offered at trial. *See Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013). This statement presumes that the legal basis for suppression urged on appeal comports with the objection made at the suppression hearing. *Id.* at n.14. We conclude counsel's performance in not objecting during trial to evidence related to the legality of the search of Appellant's property was not deficient.

Appellant does not argue that counsel's alleged errors would have resulted in a different outcome. Moreover, the record is not fully developed on trial counsel's trial strategy, and we will not denounce his performance as deficient without an opportunity to explain his decisions. *See Menefield*, 363 S.W.3d at 593. Issue two is overruled.

## ATTORNEY'S FEES

We note an issue not raised regarding assessment of attorney's fees.[9] The first of the nine judgments entered bears a handwritten note that "[t]he costs of court shall

---

[9] When a defendant appeals his or her conviction, courts of appeal have jurisdiction to address any error in that case. *Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012).

include $600.00 of attorney fees as costs of court." Although Appellant began the underlying proceedings with retained counsel, she was later determined to be indigent and counsel was appointed to represent her.

In order to assess attorney's fees as court costs, a trial court must determine that the defendant has financial resources that enable him or her to offset in whole or in part the cost of legal services provided. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014). Unless a material change in a defendant's financial resources occurs, once a criminal defendant has been found to be indigent, he or she is presumed to remain indigent for the remainder of the proceedings. *Id.* at 26.04(p). There is no evidence of record demonstrating that Appellant's financial resources changed. The record must reflect some factual basis to support the determination that the defendant was capable of paying attorney's fees at the time of assessment. *Barrera v. State,* 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.); *Perez v. State,* 280 S.W.3d 886, 887 (Tex. App.—Amarillo 2009, no pet.).

Here, the record does not contain a pronouncement, determination or finding that Appellant had financial resources that enabled her to pay all or any part of the fees paid her court-appointed counsel, and we are unable to find any evidence to support such a determination. Therefore, we conclude the judgment improperly orders the repayment of attorney's fees. *See Mayer v. State,* 309 S.W.3d 552, 555-56 (Tex. Crim. App. 2010). When the evidence does not support an order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557.

15

We modify the trial court's judgments to delete the order to pay $600 for attorney's fees and as modified, the judgments are affirmed.


Patrick A. Pirtle
Justice


Do not publish.